# Illinois Official Reports

## Appellate Court

---

### *People v. Bausch*, 2019 IL App (3d) 170001

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC D. BAUSCH, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-17-0001 |
| Filed | March 8, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 16-CM-1966; the Hon. Edward A. Burmila Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Presiding Justice Schmidt and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Eric D. Bausch, appeals his conviction for domestic battery. Defendant argues that the State failed to disprove beyond a reasonable doubt that he acted in defense of his property during the underlying incident. Defendant also argues that his fines should have been offset by an additional $5 in monetary credit. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3     Defendant was charged with domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)) in that he made physical contact of an insulting or provoking nature with Jovanna Bausch, a family or household member, by grabbing Jovanna about the body.

¶ 4     The matter proceeded to a bench trial in Will County circuit court. Jovanna testified that defendant was her husband and they had been married for 16 years. They had three children together. On July 14, 2016, Jovanna drove to a marina with her and defendant's two daughters so they could spend the night in their boat. Jovanna and defendant had had the boat for two years, and they both used the boat during that time.

¶ 5     When they arrived at the marina, Jovanna saw defendant's vehicle. Jovanna and her daughters entered the boat and saw defendant sleeping. Jovanna grabbed defendant's cell phone. She opened his Tinder page and read his messages. Jovanna explained that she believed Tinder was "[w]here you meet girls." Jovanna saw that defendant had been sending messages to other women, and she became angry. Jovanna took defendant's phone to her vehicle and searched through it. She took pictures of things on defendant's phone. Jovanna then went back to the boat and returned defendant's phone. At some point after Jovanna returned to the boat, defendant woke up.

¶ 6     Jovanna took the keys, title, and deed to the boat. Jovanna testified that her name was not on the title to the boat. Jovanna testified that defendant saw her take the keys to the boat, but he did not see her take the deed and title. Jovanna told defendant that she found out he had been talking with women. Jovanna walked to her vehicle, and defendant followed her. Jovanna and her daughters entered her vehicle. Defendant asked Jovanna for the boat keys and the "papers for the boat." Defendant became angry. Defendant entered Jovanna's vehicle and sat down. Defendant said he was not leaving until he got the keys and papers. Defendant and Jovanna continued to argue. Eventually, defendant exited Jovanna's vehicle and walked toward his vehicle.

¶ 7     Jovanna began driving out of the parking lot. When she passed defendant's vehicle, defendant walked in front of Jovanna's vehicle and stopped her. Defendant approached Jovanna's vehicle and tried to take Jovanna's purse through the open driver's side window. Jovanna's purse was between the driver's seat and passenger's seat. Defendant touched the purse and tried to open it. Jovanna grabbed the purse with two hands. Defendant tried to take the purse away from Jovanna, and he grabbed her arm in doing so. One of Jovanna and defendant's daughters exited the vehicle and jumped on defendant's back. The other daughter began hitting defendant. Two people came over and told defendant to move away. Defendant stepped away. Defendant sat in the backseat of Jovanna's vehicle until the police arrived.

¶ 8     The parties stipulated that Officer Dustin Carlson would testify that Jovanna and her daughters were emotionally distraught and crying hysterically when he arrived on the scene.

Carlson would also testify that Jovanna had red blemishes and marks on both of her arms. Carlson would testify that Jovanna requested that she be examined by emergency medical services personnel because her arms were burning.[1]

¶ 9　　　　The State rested.

¶ 10　　　　Defendant testified that he was sleeping in his boat on the evening of the incident. Defendant had been sleeping in the boat because he and Jovanna had been having marital problems and were separated. Defendant woke up when Jovanna placed his cell phone in front of him. Jovanna started talking about defendant's Tinder messages. Jovanna walked out of the cabin and said she had the keys to the boat. Defendant followed Jovanna to her vehicle. Defendant entered the vehicle and sat in the back seat. Defendant and Jovanna argued about defendant's Tinder page. Defendant told Jovanna that taking the keys to the boat was not "that big of a deal" because he could change the ignition.

¶ 11　　　　Defendant exited Jovanna's vehicle and walked over to his vehicle. Defendant saw that "[a]ll of the boat papers" were missing. Defendant stated that the papers had to stay with the boat. Defendant was the owner of the boat, and Jovanna's name was not on any of the papers. Defendant stepped in front of Jovanna's vehicle. He approached the driver's side window and told Jovanna that she could not take the boat papers. They argued for a while. Defendant realized that the boat papers were not in the visor of Jovanna's vehicle. Defendant grabbed Jovanna's purse. Defendant did not see Jovanna put the papers in her purse, but he suspected the papers were in the purse. Defendant explained: "It's a lot of papers. I would have noticed them in the van earlier when I was sitting in the backseat trying to get the keys." Defendant also said that he believed that Jovanna was "not just going to shove those somewhere."

¶ 12　　　　Defendant pulled the strap of the purse "pretty hard." Jovanna grabbed the purse, and defendant then pulled the purse strap with two hands. They struggled over the purse for 5 to 10 seconds, and the purse strap broke. Defendant only touched the purse strap; he did not grab Jovanna. One of defendant and Jovanna's daughters jumped on defendant's back. The other daughter did not hit him. Defendant sat in the backseat of Jovanna's vehicle while they called the police. He did not speak to Jovanna at that time. Defendant testified that he did not tell a police officer that he saw Jovanna remove the boat keys and papers from his vehicle on the night of the incident.

¶ 13　　　　The defense rested.

¶ 14　　　　The State called Officer Andrew Chapple as a rebuttal witness. Chapple testified that he responded to a call regarding a disturbance at the marina at approximately 9:20 on July 14, 2016. When he arrived on the scene, he observed several crying females and defendant standing together. Chapple spoke with defendant. Defendant told Chapple that he observed Jovanna remove his boat keys and papers from his vehicle.

¶ 15　　　　During closing argument, defendant argued that he was attempting to defend his property, which Jovanna had stolen from him. Defendant contended that he took reasonable steps to secure his property and asked that the court find him not guilty based on the affirmative defense of defense of property.

---

[1]The State asserts in its brief that the stipulation is not contained anywhere in the record. However, the stipulation appears on page 14 in the common-law record. The stipulation is handwritten and signed by the parties' attorneys.

¶ 16 The court found defendant guilty of domestic battery. The court stated that Jovanna's injuries resulted from insulting and provoking contact from defendant. The court reasoned: "I can't think of anything that would be more insulting or provoking than for a man to try to pull a purse away from a woman, especially under the circumstances of him not knowing whether the documents he was seeking were in it." The court also noted that the fact that the daughters believed they needed to defend their mother showed that the conduct was insulting or provoking.

¶ 17 Regarding the affirmative defense of defense of property, the court stated: "There is nothing to indicate in this case that her presence on the boat, her access to the keys, her access to those documents was [tortious] or criminal trespass or criminal abuse in any fashion." The court reasoned that, even if Jovanna's name was not on the title documents, "the fact that these people were married would transcend the signatures on the title documents unless there was some proof ultimately that he had the property before they were married."

¶ 18 The court sentenced defendant to 18 months' conditional discharge. The court asked defendant how long he had been in custody prior to sentencing. Both defendant and defense counsel advised the court that defendant had been in custody for two days. The court gave defendant the statutory $5-per-day monetary credit to be applied against his fines in the amount of $10 for the two days defendant served in custody.

¶ 19                                    II. ANALYSIS

¶ 20                           A. Sufficiency of the Evidence

¶ 21 Defendant argues that the trial evidence was insufficient to prove him guilty of domestic battery beyond a reasonable doubt. Specifically, defendant argues that the State failed to disprove that his use of force was justified by the affirmative defense of defense of property. We find that, when viewed in the light most favorable to the State, the trial evidence proved beyond a reasonable doubt that defendant's use of force was not justified.

¶ 22 To prove defendant guilty beyond a reasonable doubt of domestic battery, the State was required to establish that defendant knowingly, without legal justification, made physical contact of an insulting or provoking nature with a family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2016). Regarding the affirmative defense of defense of property, section 7-3(a) of the Criminal Code of 2012 (Code) (*id.* § 7-3(a)) provides: "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with *** personal property, lawfully in his possession ***." At the trial, defendant presented evidence supporting this affirmative defense through his own testimony. Accordingly, the State was required to disprove the affirmative defense in addition to proving the elements of the charged offense. *Id.* § 3-2(b); *People v. Washington*, 326 Ill. App. 3d 1089, 1092-93 (2002).

¶ 23 When presented with a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quotin*g Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 24     Defendant does not argue that the State failed to prove that he made physical contact of an insulting or provoking nature with Jovanna or that Jovanna was a family or household member. Rather, defendant argues that the State failed to show that defendant's use of force was unjustified. Specifically, defendant argues that the State failed to disprove that defendant acted in defense of his property pursuant to section 7-3(a) of the Code (720 ILCS 5/7-3(a) (West 2016)).

¶ 25     We find that, when viewed in the light most favorable to the State, the trial evidence established beyond a reasonable doubt that defendant's use of force against Jovanna was not justified. Even assuming that the boat was solely defendant's property, any belief that defendant's use of force was necessary to retrieve his property was unreasonable under the circumstances. Defendant admitted he did not know that the boat keys and title papers were in Jovanna's purse. Rather, he suspected these items were in the purse because he did not see them in the visor of Jovanna's vehicle. Defendant's mere suspicion that his property was located in Jovanna's purse did not justify him in forcefully grabbing Jovanna's arms or purse (which was her property). Under these circumstances, defendant's use of force against Jovanna was excessive and unreasonable.

¶ 26     We acknowledge that the circuit court rejected defendant's affirmative defense on a different ground—namely, that Jovanna had a marital property interest in the boat. We decline to adopt the circuit court's reasoning on this point. However, we may affirm the judgment of the circuit court on any basis supported by the record. *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010).

¶ 27                                B. Monetary Credit

¶ 28     Defendant argues that he is entitled to an additional $5 in monetary credit to be applied against his fines because the record shows that he was in custody prior to sentencing for three days rather than two days. We find that the record does not show with sufficient clarity that defendant is entitled to the requested relief.

¶ 29     Section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14(a) (West 2016)) provides: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of the offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." An application for monetary credit under section 110-14 may be raised at any time and at any stage of court proceedings if "the basis for granting the application of the defendant is clear and available from the record." *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). "Whether a defendant received proper credit against his fine is a question of law that we review *de novo*." *People v. Sulton*, 395 Ill. App. 3d 186, 189 (2009).

¶ 30     Here, the record does not show with sufficient clarity that defendant spent three days in presentence custody rather than two. Defendant and his attorney both advised the circuit court that defendant spent two days in presentence custody. A mittimus for failure to give bail appearing in the record shows that defendant failed to give bail on July 15, 2016, and was remanded to the confinement of the county jail on that day. A bail bond deposit appearing in the record shows that defendant posted bond on July 16, 2016. Based on defendant's and defense counsel's statements to the court, the mittimus for failure to give bail, and the bail bond deposit, it is clear that defendant spent two days in presentence custody.

¶ 31    Defendant contends that the record shows that he spent an additional day in custody because he was taken into custody shortly after 9 p.m. on July 14, 2016. In support of his contention, defendant cites Officer Chapple's testimony that he responded to a call for a disturbance at the marina at approximately 9:20 p.m. on July 14, 2016. However, Chapple did not testify as to when defendant was taken into custody. Defendant also cites defense counsel's statement during closing argument that defendant was arrested after the police arrived. However, defense counsel's closing argument was not evidence, and it did not establish precisely what time defendant was taken into custody. Based on the record before us, it is possible that defendant spent a portion of July 14, 2016, in custody, but it is also possible that he was not taken into custody until after 12 a.m. on July 15, 2016.

¶ 32    Because the basis for granting defendant's application for an additional day of monetary credit is not "clear and available from the record" (*Caballero*, 228 Ill. 2d at 88), defendant has not established that he is entitled to the requested relief. See *People v. Lopez*, 229 Ill. 2d 322, 344 (2008) ("[T]he appellant bears the burden of providing a reviewing court with a complete record sufficient to support his claims of error, and any doubts that arise from the incompleteness of the record will be resolved against the appellant.").

¶ 33                                III. CONCLUSION
¶ 34    The judgment of the circuit court of Will County is affirmed.

¶ 35    Affirmed.