2022 IL App (2d) 210151
No. 2-21-0151
Opinion filed June 24, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CM-1026 |
| MATHEW JOHN GRABOW, | ) ) | Honorable Jennifer J. Clifford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Matthew John Grabow, was charged with domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)) for striking his girlfriend, Yasmin L. El Said, on the face as she continued talking on defendant's cell phone after he asked her to give him the phone. A jury found defendant guilty, and the trial court sentenced him to 12 months of conditional discharge. At issue on appeal is whether defense counsel was ineffective for failing to tender a defense-of-property instruction. We determine that counsel was not ineffective. Accordingly, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State's information charging defendant with domestic battery alleged:

"That on the 16th day of April, 2019, *** [defendant] committed *** DOMESTIC BATTERY, in that the defendant knowingly or intentionally made physical contact of an insulting or provoking nature with [El Said], a family member or a household member of said defendant, in that the said defendant struck [El Said]."

¶ 4 Before the trial began, the parties tendered their proposed jury instructions to the trial court. Defense counsel submitted one instruction, which directed the jury not to consider in any way the fact that defendant did not testify. The defense did not tender a defense-of-property instruction.

¶ 5 The State filed a motion under section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2018)), seeking to present evidence of two prior domestic batteries involving defendant. The court allowed the State to present evidence of a September 24, 2016, domestic battery that involved defendant and El Said.

¶ 6 Evidence presented at trial revealed that defendant and El Said had been in a relationship for almost nine years. On April 16, 2019, they lived in an old multistory farmhouse in Rockford. El Said spent that day cleaning the house and opening the windows to let fresh air in, as it was the first nice spring day in the area. Because it was such a nice day, El Said called upstairs to defendant and asked him if he wanted to go outside with her. Defendant came downstairs, and the couple sat together on the den couch. While they sat in the den, defendant commented that he was "God's gift to [El Said] or the best thing that ever happened to [her]." El Said—who disagreed—made a " 'pfft' " sound, defendant became angry, and a verbal argument ensued. Defendant threatened El Said's family, and El Said—who "had *** asked [defendant] for permission to use his phone"—called her older sister, Sarah Romanovich.

¶ 7 El Said testified that she called Romanovich to tell her that defendant had threatened the family and that El Said would be unable to contact them anymore. El Said put Romanovich on the

phone's speaker, but she took her off speaker when it became clear that Romanovich's conversation with defendant was only aggravating the situation. Defendant, who was standing by the entrance to the den, then asked El Said for his phone back. El Said said no because she was talking to Romanovich. Defendant then "charge[d]" toward El Said. He stood an arm's length away from El Said, who was still sitting on the couch, and "[El Said] ended up with a smack on [her] face under [her] cheekbone and the phone and [her] glasses [went] flying across the room." El Said, who described the incident as happening very quickly, testified that "[t]here was some force that caused me to drop [the phone]—that is all I remember. I don't remember where his hand or whatever contacted my arm, but there was some force to cause me to drop the phone." When asked, "So you can't say with 100 percent certainty that he even hit your face," El Said responded, "No, he hit my face, 100 percent. That was the first contact was the sting to my face. After that was the motion of my arm and the contact with—." El Said was also asked if "defendant [was] just grabbing for the phone that day." She replied, "If that was his intention, he still hit my face." El Said testified that she asked defendant for her glasses. Defendant picked up his phone from the floor and put it on a counter.

¶ 8    El Said also testified about the September 24, 2016, domestic battery. On that occasion, they argued and defendant "blamed [her] for something [she] supposedly [did]." He was angry and swore at her. She was sitting on a couch in their home, and he was "hovering above [her]." He "smacked" and spit on her as she sat on the couch.

¶ 9    Romanovich testified that El Said sounded "[p]anicked [and] sad" when she called her. "[El Said] seemed very concerned, which made [Romanovich] very concerned." Romanovich explained that she was "extremely" worried about El Said's safety.

¶ 10     As she was talking to El Said, Romanovich heard defendant very clearly. Defendant was "[i]rate, agitated, [and] angry." He was yelling and directing "vulgar terms" at Romanovich, which made Romanovich feel threatened. (She admitted that she currently disliked defendant.) When defendant began addressing her, she addressed him back. However, she believed that this further agitated defendant because she heard defendant running toward the phone. The "next thing [she heard] *** was almost like the phone was being smacked" or a "skin-on-skin slap." Romanovich described the sound as "very loud." Next, she heard El Said scream, yell, and "yelp like she was crying." Romanovich then "heard the phone smack and chaos." After the loud smack sound, Romanovich heard the phone drop and then heard nothing. She called her local police department, who put her in contact with the Rockford police.

¶ 11     Rockford police officer Ryan Terranova testified that he responded to a domestic disturbance and welfare check at the couple's home. Officer Terranova saw El Said when she opened the door. He did not immediately see defendant. El Said was "visibly upset." Her eyes were red, watery, and puffy; she was out of breath. She told Officer Terranova that she was afraid. Although Officer Terranova observed no physical injury to El Said, he explained that not every slap to the face causes physical injuries. When defendant saw El Said talking to Officer Terranova, defendant began yelling from across the room. He was agitated and upset. He yelled that "[n]o crime had been committed." Defendant told Officer Terranova that "[h]e heard her [presumably El Said] calling him evil, so he took the phone and said that when he took the phone, her glasses fell off, and then he went upstairs."

¶ 12     Defense counsel moved for a directed verdict, arguing that the State failed to establish that defendant *knowingly* made physical contact with El Said when he tried to grab his phone. See 720 ILCS 5/12-3.2(a)(2) (West 2018) ("(a) A person commits domestic battery if he or she knowingly

without legal justification by any means *** (2) Makes physical contact of an insulting or provoking nature with any family or household member."). The trial court denied the motion. The State rested. After the court admonished defendant about his right to testify, defendant decided not to testify and presented no evidence. The court asked the parties if they needed to address any additional jury instructions, and defense counsel said no.

¶ 13    In closing, the State addressed what it meant to "knowingly" make physical contact. The State asserted, "And we know it was done knowingly because the defendant walked up to [El Said] and slapped her."

¶ 14    In its closing, defense counsel stated, "If it was [defendant's] intention to grab the phone, I don't know. Those are the words from Ms. El Said as she sat and testified." Counsel stated that defendant "was grabbing his phone" and that he "had no intention of striking Ms. El Said. He did not knowingly strike Ms. El Said. He was reaching for a phone."

¶ 15    After closing arguments, the trial court instructed the jury. However, the court did not give the jury a defense-of-property instruction.

¶ 16    The jury found defendant guilty. Defendant moved for a new trial, and the trial court denied that motion.[1] This timely appeal followed.

¶ 17                                  II. ANALYSIS

---

[1]In the motion for a new trial, defense counsel argued that the trial court erred in refusing to give the "following" jury instructions. No instructions followed. The State replied, noting that defendant's allegations concerning the jury instructions lacked specificity. When the trial court denied the motion, it noted that it did not know which jury instructions defense counsel was referencing in the motion.

¶ 18    Defendant argues that defense counsel was ineffective for failing to tender a defense-of-property jury instruction.

¶ 19    "In determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984)." *People v. Falco*, 2014 IL App (1st) 111797, ¶ 14. "To prevail on a claim of ineffective assistance of counsel, a defendant must show [(1)] that counsel's performance was deficient and [(2)] that the deficient performance prejudiced the defendant such that he was deprived of a fair trial." *Id.* In proving deficient performance, " '[t]he defendant 'must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy.' " *People v. Bustos*, 2020 IL App (2d) 170497, ¶ 86 (quoting *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007)). "To establish prejudice, the defendant must show a reasonable probability that, absent counsel's alleged error, the trial's outcome would have been different." *Falco*, 2014 IL App (1st) 111797, ¶ 14. " 'A reasonable probability of a different result is not merely a possibility of a different result.' " *Id.* (quoting *People v. Evans*, 209 Ill. 2d 194, 220 (2004)). "If the defendant fails to establish either prong, his ineffective assistance claim must fail." *Id.* Because "the facts relevant to [defendant's] ineffective assistance of counsel claim are not disputed, our review is *de novo*." *Id.*

¶ 20    Defendant's ineffectiveness claim concerns the failure to tender a jury instruction. " '[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.' " *People v. Everette*, 141 Ill. 2d 147, 156 (1990) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). However, "counsel's choice of jury instructions, and the decision to rely on one theory of defense to the exclusion of others, is a matter of trial strategy." *Falco*, 2014 IL App (1st) 111797, ¶ 16. " 'Such decisions enjoy a strong

presumption that they reflect sound trial strategy, rather than incompetence' and, therefore, are 'generally immune from claims of ineffective assistance of counsel.' " *Id.* (quoting *People v. Enis*, 194 Ill. 2d 361, 378 (2000)). That said, "the failure to request a particular jury instruction may be grounds for finding ineffective assistance of counsel if the instruction was so critical to the defense that its omission den[ied] the right of the accused to a fair trial." (Internal quotation marks omitted.) *Id.*

¶ 21    Defendant claims that his counsel should have sought a defense-of-property instruction, which is an affirmative defense (*People v. Bausch*, 2019 IL App (3d) 170001, ¶ 22). An affirmative-defense instruction is proper even if slight supporting evidence was presented at trial. *Id.*; see also *People v. Alexander*, 250 Ill. App. 3d 68, 76 (1993).

¶ 22    When a defendant raises an affirmative defense, the State must prove beyond a reasonable doubt the elements of the charged offense and disprove beyond a reasonable doubt the affirmative defense. *Bausch*, 2019 IL App (3d) 170001, ¶¶ 21-22; see also *People v. Cruz*, 2021 IL App (1st) 190132, ¶ 42. Thus, if defendant had raised an affirmative defense to the domestic-battery charge here, the State would have had to prove beyond a reasonable doubt that defendant knowingly, *without legal justification*, made physical contact of an insulting or provoking nature with a family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2018). If defendant had claimed defense of property as that legal justification, the State would need to disprove beyond a reasonable doubt that defendant was "justified in the use of force against [El Said] when and to the extent that he reasonably believe[d] that such conduct [was] necessary to prevent or terminate [El Said's] trespass on or other tortious or criminal interference with *** [his] personal property, lawfully in his possession." See *id.* § 7-3(a).

¶ 23 "[T]o justify the use of force, [a defendant] must reasonably believe (a) *** that his personal property is in immediate danger of unlawful trespass or carrying away, and (b) that the use of force is necessary to avoid this danger." 2 Wayne R. LaFave, Substantive Criminal Law § 10.6, at 165-66 (2d ed. 2003). "Even when [a defendant] entertains these reasonable beliefs, however, he may not use more than reasonable force ***." *Id.* at 166. These same rules apply when a defendant seeks to regain possession of his personal property from another. *Id.* at 171. ("[A] momentary advantage obtained by the supposed wrongdoer does not alter the rules on defense of property; where force is allowed to defend property, similar force may be used to regain possession promptly after its loss."). That is, the defendant "may resort to reasonable nondeadly force to repossess his property if he acts immediately after the dispossession." *Id.* at 170.

¶ 24 Here, even if we presume that El Said's permission to use the phone terminated when defendant asked for it (see *Valor Insurance Co. v. Torres*, 303 Ill. App. 3d 554, 556-58 (1999) (permission that insured's friend had to drive insured's truck was revoked when insured simply asked friend " 'not to take [his] truck anywhere' ")), we cannot conclude that evidence that defendant *might* have been grabbing for the phone when he hit El Said was "slight" evidence warranting a defense-of-property instruction (*People v. Taylor*, 233 Ill. App. 3d 461, 465 (1992) ("While even slight evidence which supports the underlying theory of defense warrants the giving of [an] *** instruction, mere speculation will not.")).

¶ 25 Further evidence revealed that defendant asked El Said for his phone after she took Romanovich off the speaker, and El Said said no. Even if defendant struck El Said to retrieve his phone, the phone was not in *immediate* danger of unlawful trespass, carrying away, or other tortious or criminal interference. Force was unnecessary to avoid the danger of El Said's continuing discussion with Romanovich on defendant's phone. When defendant struck El Said,

she was seated on the couch in the couple's home. Nothing suggested that she would leave or do anything with the phone that would prevent defendant's later use.

¶ 26    Moreover, the evidence suggested that defendant did not ask for his phone because he was concerned about an unlawful trespass or tortious interference. Defendant, who had been arguing with Romanovich, heard El Said call defendant "evil." This remark, not defendant's concern about possession of his phone, prompted defendant to ask for his phone and strike El Said's face where she was holding the phone. After El Said dropped the phone, defendant did not leave with it. Rather, he picked it up and placed it on a counter—within easy reach of El Said—and went upstairs.

¶ 27    Finally, the force defendant used to retrieve his phone was excessive. He struck El Said with such force that (1) she dropped the phone, (2) her glasses flew off her face, (3) she began crying heavily, and (4) she became afraid. This force was unnecessary to avoid the danger of El Said continuing to talk to Romanovich on defendant's phone in the couple's home.

¶ 28    The fact that the evidence does not suggest that defendant struck El Said in defense of his phone is fatal to any conclusion that counsel's failure to tender a defense-of-property instruction constituted deficient performance. Even if counsel could have raised a defense-of-property affirmative defense, not raising it was a sound decision. See *People v. Kyse*, 220 Ill. App. 3d 971, 974 (1991) ("[D]efense counsel, in an exercise of judgment and trial strategy, chose not to raise the affirmative defense of voluntary intoxication, although such defense could have been raised."). Also, defendant was not prejudiced when counsel failed to tender a defense-of-property instruction. The evidence of defendant's guilt was so strong that the jury's verdict would not have changed even if the court had given a defense-of-property instruction. *People v. Maclin*, 2014 IL App (1st) 110342, ¶ 39; *People v. Flores*, 269 Ill. App. 3d 196, 207 (1995). Moreover, raising

defense of property would have arguably harmed, rather than helped, defendant's case. In disproving a defense-of-property claim, the State might very well have highlighted defendant's previous battering of El Said under similar circumstances. Moreover, the State might also have highlighted that defendant used excessive force. El Said was not going anywhere with defendant's phone when he forcefully slapped her. See *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 43 (" '[A] rule that counsel should argue all available defenses as a matter of course would make many clients worse off,' since 'a defendant who advances an inconsistent argument may shoot himself in the foot by implicitly conceding part of the prosecution's case, or by making the defense seem unprincipled.' " (quoting *Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005))).

¶ 29    As a final matter, we comment briefly on the public policy concerns of this case. Based on the facts presented here, if we were to conclude that a defendant could strike a domestic partner merely to obtain possession of the defendant's personal property—which the domestic partner had permission to use—we would be condoning the use of violent actions in situations that are already quite volatile. In our view, the defense-of-property affirmative defense was not intended to be applied in cases like this.

¶ 30                                   III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 32    Affirmed.

2022 IL App (2d) 210151

---

## 2022 IL App (2d) 210151

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 19-CM-1026; the Hon. Jennifer J. Clifford, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Zachary Wallace, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Max C. Boose, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---