2022 IL App (2d) 210736-U
No. 2-21-0736
Order filed November 30, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20 CF 1031 |
| DEREK C. LURIE, | ) ) | Honorable Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction for endangering the life or health of a child is reversed for insufficiency of the evidence.

¶ 2     Following a jury trial, defendant, Derek C. Lurie, was convicted of, *inter alia*, one count of endangering the life or health of a child. Defendant challenges the conviction on sufficiency-of-the-evidence and due process grounds. For the reasons set forth below, we reverse defendant's conviction for endangering the life or health of a child and vacate the sentence as to that offense.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was charged with two counts of domestic battery, one count of endangering the life or health of a child, and one count of possession of drug paraphernalia in connection with a December 27, 2020, incident involving his then 13-year-old daughter, A.L. Regarding the count for endangering the life or health of a child, a class A misdemeanor, the information alleged that, on December 27, 2020, in McHenry County, defendant "did knowingly cause or permit the life or health of [A.L.] [born in 2007] to be endangered, in that said defendant grabbed [A.L.'s] hair while [A.L.] was a passenger in a vehicle being driven erratically by the defendant," in violation of section 5/12C-5(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12C-5(a)(1) (West 2020)).

¶ 5                                      A. Pretrial Motion

¶ 6 Prior to trial, defendant filed a motion *in limine*, seeking to limit certain evidence, including, in relevant part, testimony about syringes found in his car on the day of the incident. Following argument, the trial court granted the motion "with respect to all items except for the presence of syringes." The trial court found the testimony relevant to the possession of drug paraphernalia charge but limited the testimony to the following purpose:

> "The State will be allowed to elicit testimony regarding the discovery of the syringe. The State will be precluded from offering any evidence regarding testing of the syringe or syringes, and will be precluded from attempting to elicit any testimony that there was an indication of use of the syringe. It will be solely for the purpose of establishing that it is the—it was found in the car, and the proximity, if established at or near the location of the spoon [also found in defendant's car on the day of the incident], can be then argued by the parties in terms of what it actually means or whether it is relevant.

*  *  *

[I]t is the Court's position, given that there is no possession charge brought here against [defendant], that the elicitation of that evidence would cause a potential prejudice and would delve into that area of convicting him just because he had what is potentially an illegal or illicit substance."

¶ 7                                                    B. Trial

¶ 8     The case proceeded to a two-day jury trial on October 18, 2021. The State called four witnesses: (1) A.L., (2) Harvard police officer Edward Kohn, (3) McHenry County sheriff's deputy Stanley Myk, and (4) McHenry County sheriff's deputy John Sosnowski. We recount the testimony in relevant part.

¶ 9                                                    1. A.L.

¶ 10    A.L. testified regarding the events of December 27, 2020. At the time, she lived primarily with her mother in Chicago. Defendant picked up A.L. from her mother's house in Chicago on the morning of December 27, 2020, for a planned ski trip during winter break. After leaving Chicago, defendant and A.L. drove in defendant's Jeep, with A.L. in the back seat, to Antioch to pick up defendant's skis.

¶ 11    A.L. testified that, after picking up the skis, defendant pulled up directions to Colorado on his GPS. When A.L. saw this, she told defendant that she did not want to travel to Colorado because she had to take a scheduled test after winter break and was concerned that the COVID-19 pandemic quarantine restrictions at the time would preclude her ability to take the test. A.L. further testified that her mother told A.L. to call her and 911 if defendant tried to take her out of state for the ski trip. There was no evidence of any restrictions on leaving the state during defendant's parenting time with A.L., and A.L. testified that she and defendant had taken out-of-state ski trips in the past.

¶ 12    At that point, A.L. texted her mother from her cell phone. After defendant told A.L. to put her phone away, A.L. texted her mother from her smart watch. Defendant then confiscated the watch. A.L. testified that she proceeded to call 911 from her cell phone pursuant to her mother's direction and because she felt anxious that she may not be able to take the scheduled test upon return from Colorado. However, defendant reached back with one hand in an attempt to take her phone and grabbed her hood or hair to take the phone. After taking the phone, defendant put the phone in the driver's side door of the Jeep. A.L. testified that she proceeded to open the back passenger door of the moving car and stuck her "foot" out the door, although her subsequent testimony reflected that she stuck her "leg" out the door. A.L. testified that she did this "[t]o let anyone know that I was in the car to get like to civilization or let anyone know that I was not okay."

¶ 13    A.L. further testified that, after she opened the door of the moving car and stuck her foot or leg out, defendant reached back and grabbed her hair to get her back into the car, pulling her to the front seat of the Jeep in the process. A.L. clarified that defendant pulled her hair only after she opened the car door. A.L. testified that defendant was upset and angry and told her that she was suicidal. When questioned as to "how the car was moving while you were having your argument with your dad," A.L. testified that she did not "entirely remember" but remembered that the car "was just going straight" and "wasn't turning much." A.L. explained that defendant did not stop the car until the police pulled defendant over. From inside the Jeep with the window rolled down, A.L. mouthed "help" to a police officer "so he could see that I wasn't okay."

¶ 14                              2. Officer Kohn

¶ 15    Kohn testified that he was the police officer to whom A.L. mouthed "help." He was dispatched to Route 173 and Hayes Street in Harvard at approximately 11 a.m. on December 27, 2020. When Kohn arrived at the scene, he observed a Jeep that had been stopped by a McHenry

County sheriff's deputy. There was a "young female that was in the rear passenger's area of the vehicle" who was crying and mouthed the words "help me." Kohn testified that he relayed the information to Deputy Myk. Kohn acknowledged that he did not see how the Jeep was driving because it was stopped when he arrived and did not see "if anything happened inside the vehicle prior to being stopped."

¶ 16                              3. Deputy Myk

¶ 17    Myk testified that he was dispatched to the area of Route 173, between Harvard and Alden, at approximately 11:06 a.m. on December 27, 2020. He explained the nature of the dispatch. "There was a vehicle that was seen in—just outside of Antioch just—or at 173 and Wilmot where it appeared to the caller that someone had pushed open the rear door of a moving vehicle and attempted to get out and someone inside that vehicle had restrained that person from getting out of the vehicle." As Myk was driving to the reported location, he identified a black Jeep that matched the description he received from dispatch. Myk initiated a traffic stop by turning on his lights and siren. The Jeep, which was approximately 19 to 20 miles from the reported area of the incident, pulled over.

¶ 18    When questioned as to whether anything drew his attention to the Jeep, Myk testified that the Jeep "was moving at a high rate of speed." Myk followed the Jeep and noted that it passed another vehicle in a no-passing zone. Other than this violation, which Myk acknowledged was a relatively minor traffic violation, Myk did not observe any erratic driving.

¶ 19    Myk identified the driver of the Jeep as defendant and testified that there was young girl in the "back seat middle," whom he learned was A.L. Myk described defendant's and A.L.'s demeanor at the scene. Defendant "seemed to be out of breath"; he was "shaky or his hands were trembling"; and he "seemed a little out of sorts." A.L.'s face was flushed; her eyes were red, and

it looked as though she had been crying; and her hair was messed up. Myk testified that Harvard Fire and Rescue arrived at the scene, performed a medical evaluation of A.L., and concluded that there were no injuries.

¶ 20                                    4. Deputy Sosnowski

¶ 21    Sosnowski arrived at the scene shortly after Myk. Sosnowski testified that he asked defendant what happened, and defendant responded that he had "an altercation and a fight with his daughter in the car." However, when Sosnowski asked defendant to provide additional details, defendant stated that he did not recall what happened. Sosnowski described defendant as very nervous with an elevated voice and shaky hands.

¶ 22    Both Myk and Sosnowski testified regarding their search of the Jeep and the items recovered, including several syringes in the center console, one syringe on the floorboard of the back seat, a prescription bottle of buprenorphine (prescribed to defendant) in the driver's door compartment, and a backpack on the floor of the front passenger seat. Inside the backpack was another syringe, an open bag of cotton balls, and what appeared to be a burned spoon with residue and part of a cotton ball stuck to it. Both Myk and Sosnowski acknowledged that a spoon could be used to ingest a legally prescribed substance. There was no evidence of illegal drugs found in the Jeep.

¶ 23                           C. Motion for Directed Verdict

¶ 24    At the close of the State's case, defendant moved for a directed verdict on all counts. Regarding the charge for endangering the life or health of a child, defense counsel argued that defendant was charged with grabbing A.L.'s hair "while she was a passenger in a vehicle that was being driven erratically by the defendant," yet the State presented no evidence that defendant was driving erratically.

¶ 25    Following argument, the trial court denied the motion in its entirety. Addressing the child endangerment charge, the trial court reasoned:

"[T]he defense argues that there was no indication of erratic driving. The testimony of Deputy Myk was that the car being driven by the defendant was being operated at a high rate of speed. There are certainly individuals who might argue that high rate of speed operation is not erratic, but the deputy also testified that the defendant, the black Jeep, crossed a double yellow no-passing line while he was behind the vehicle and was observing it. That certainly places in the trial record evidence of some erratic operation in conjunction with then the assertion by [A.L] that the defendant allegedly grabbed her hair as was testified."

¶ 26                              D. Closing Arguments

¶ 27    The case proceeded to closing arguments. At issue on appeal is a portion of the State's rebuttal closing argument. Specifically, in its closing rebuttal, the State argued:

"The defense argues that simply speeding on its own is not enough to put a child's life and health at risk. In that limited scope, he's right; but, again, it ignores so many of the facts of this case. It's not just that he was speeding. It's not just that he went halfway across McHenry County in about ten minutes. It's that he's doing all this while his child is hanging out the seat. It's that he's doing all this while he's turned around looking at her. It's that he's speeding while weaving around cars during all this. It's endangerment when he does all this while there are dirty needles, a dozen dirty needles, rolling around in his car within arms reach of his child. That is when it crosses over into endangerment and that's what you need to focus on here.

Let's talk about those needles for a second."

¶ 28    At this juncture, the State proceeded to present rebuttal argument with respect to the charge for possession of drug paraphernalia.

¶ 29                                E. Jury Instructions

¶ 30    In relevant part, defendant requested that the jury be instructed as to the necessity defense. The State responded that it had no objection. Accordingly, the jury was instructed that, in addition to proving the elements of the offense of endangering the life or health of a child, the prosecution was required to prove that defendant did not act out of necessity.

¶ 31    The jury was further instructed that:

> "Conduct which would otherwise be an offense is justifiable by reason of necessity if the defendant was without blame in occasioning or developing the situation and reasonably believed that such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

¶ 32                                F. Jury Verdict

¶ 33    The jury returned its verdict on October 19, 2021. The jury acquitted defendant of both domestic battery charges but found him guilty of one count of endangering the life or health of a child and one count of possession of drug paraphernalia.

¶ 34                                G. Postrial Motion

¶ 35    Defendant timely filed a motion for a judgment of acquittal or, alternatively, a new trial. With respect to the conviction for endangering the life or health of a child, defendant argued that the State presented no evidence of erratic driving, as charged in the information. Defendant argued that, while Myk testified that he observed defendant's Jeep pass in a no-passing zone at a high rate of speed, the State introduced no evidence as to the actual speed that the Jeep was traveling. Myk

also acknowledged that the type of the driving he observed would be considered a minor violation. Moreover, A.L. testified that defendant was driving the Jeep "straight," not erratically.

¶ 36    At oral argument on the motion, the State responded that "there was testimony from the officers that it was a sudden movement to pass the vehicle while the defendant's vehicle was traveling at a high rate of speed"; that A.L. testified that "at no point did the defendant attempt to slow down even while the door was open and she was hanging out"; and that "[t]he totality of the circumstances establish the erratic situation and the endangerment of the child."

¶ 37    Following argument, on November 8, 2021, the trial court summarily denied defendant's posttrial motion in its entirety.

¶ 38                        H. Sentencing

¶ 39    The case proceeded to a sentencing hearing that day, on November 8, 2021. The trial court sentenced defendant to a one-year term of conditional discharge for each of the guilty counts, to be served concurrently, and 100 hours of community service.

¶ 40    Defendant timely appealed.

¶ 41                        II. ANALYSIS

¶ 42    On appeal, defendant challenges only his conviction for endangering the life or health of a child. Defendant argues that the State failed to prove the essential elements of the offense beyond a reasonable doubt and failed to disprove defendant's affirmative defense of necessity beyond a reasonable doubt. Alternatively, defendant argues that he was denied his due process right to be informed of the charges against him when the State expanded the child endangerment charge (and violated the trial court's ruling on defendant's motion *in limine*) in rebuttal closing argument by arguing that defendant engaged in the alleged conduct while "dirty needles" were "rolling around in his car." Defendant acknowledges that he forfeited the latter issue by failing to object at trial

but contends that we should address the issue under the plain-error doctrine and that the failure to object amounted to ineffective assistance of counsel.

¶ 43     For the reasons set forth below, we hold that the evidence was insufficient to sustain the conviction for endangering the life or health of a child. We therefore need not address defendant's argument that the State impermissibly expanded its theory of the child endangerment charge during rebuttal closing argument.

¶ 44     The State has the burden of proving beyond a reasonable doubt each element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35 (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979)). A reviewing court faced with a challenge to the sufficiency of the evidence must determine "whether, [after] viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *Id.* The reviewing court's role is not to retry the defendant. *Id.* Rather, it is the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Id.* Thus, a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Id.* A criminal conviction will not be reversed unless the evidence is "so unreasonable, improbable, or unsatisfactory" that it leaves reasonable doubt of the defendant's guilt. *Id.*

¶ 45     Defendant was charged by information with one count of endangering the life or health of a child. Specifically, the information alleged that defendant "did knowingly cause or permit the life or health of [A.L.] [date of birth] to be endangered, in that said defendant grabbed [A.L.'s] hair while [A.L.] was a passenger in a vehicle being driven erratically by the defendant," in violation of section 5/12C-5(a)(1) of the Code. Section 5/12C-5(a)(1) provides that "[a] person

commits endangering the life or health of a child when he or she knowingly: (1) causes or permits the life or health of a child under the age of 18 to be endangered ***." 720 ILCS 5/12C-5(a)(1) (West 2020).

¶ 46    Defendant argues that the State failed to prove beyond a reasonable doubt that pulling A.L. back into the car by her hair caused or permitted her life or health to be endangered, much less that defendant acted knowingly to endanger A.L.'s life or health. The States responds that it proved the elements of the offense beyond a reasonable doubt. Namely, the testimony established that, after A.L. opened the car door, defendant did not stop the car or slow down. Rather, he grabbed A.L. by the hair and dragged her into the front seat of the car and only pulled over when he was stopped by the police, thereby knowingly subjecting her to potential harm or death.

¶ 47    Reviewing the record evidence in the light most favorable to the State, we nevertheless conclude that the State failed to meet its burden of proving the essential elements of the child endangerment charge beyond a reasonable doubt. Initially, we note that the State failed to establish that defendant's conduct caused or permitted A.L.'s life or health to be endangered in the first instance. To the contrary, A.L. testified that defendant grabbed her by the hair to pull her back inside the Jeep after she opened the car door and stuck her foot or leg out. Thus, by A.L.'s own account, defendant's act of grabbing her hair did not cause or permit her life or health to be endangered; rather, defendant's conduct arguably averted a tragedy. Defendant was reasonably concerned that A.L.'s actions might cause her injury, and even A.L. acknowledged that it was dangerous to open the door of the Jeep.

¶ 48    Moreover, the State presented no evidence of erratic driving in conjunction with the hair pulling as charged in the information. The law enforcement officers who responded to the dispatch call were not witnesses to any of the alleged conduct; they responded after the incident occurred.

The only testimony regarding the manner in which the Jeep was being driven at the actual time defendant pulled A.L. back into the Jeep was A.L.'s testimony that defendant was driving the car "straight." Myk's testimony that, after receiving the dispatch call and locating defendant's Jeep, that the vehicle was speeding and that he observed a minor traffic infraction when defendant passed another car in a no-passing zone is of no consequence. These observations were made well after the hair-pulling conduct, and consideration of them is at odds with the testimony of A.L. about how the car was being driven at the relevant time.

¶ 49    In addition to the State's failure to prove beyond a reasonable doubt that defendant endangered A.L.'s life or health, the State presented insufficient evidence of the requisite mental state. Where, as here, the statute is defined in terms of a particular result (the child's life becoming endangered), a person acts knowingly when he is "consciously aware" that his conduct is "practically certain" to cause the result. 720 ILCS 5/4-5(b) (West 2020); *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 54. Knowledge, by its nature, is typically proven through circumstantial evidence, rather than direct proof. *People v. Penning*, 2021 IL App (3d) 190366, ¶ 19. However, the State must present sufficient evidence from which an inference of knowledge may be made (see *id.*), and such inferences must be reasonable (see *People v. Grathler*, 368 Ill. App. 3d 802, 808 (2006)). An inference of knowledge must be based on "established facts and not pyramided on intervening inferences." *Kotlinski*, 2011 IL App (2d) 101251, ¶ 55.

¶ 50    Here, viewing the evidence in the light most favorable to the State, the testimony established that A.L. opened the door of a moving car and stuck her foot or leg out after defendant took A.L.'s cell phone and smart watch. A.L. responded affirmatively when questioned as to whether it was dangerous "to open a car door that's moving at the speed limit on [Route] 173." A.L. also agreed that it was reasonable to think she might hurt herself. A.L. confirmed that

defendant grabbed her by the hair to pull her back into the car after she opened the car door and stuck out her leg. Under these circumstances, the evidence did not support an inference that defendant was consciously aware that his conduct was practically certain to endanger A.L.'s life or health. To the contrary, the reasonable inference was that defendant grabbed A.L. by the hair to ensure her safety.

¶ 51    The State counters that defendant acted knowingly in subjecting A.L. to potential harm or death by grabbing her hair while continuing to drive, rather than stopping or slowing down. However, knowledge "probes into what the accused was 'subjectively consciously aware of.' " *Id.* ¶ 54 (quoting 1 John F. Decker, Illinois Criminal Law § 2.34, at 2-69 (2d ed. 1993)). The evidence reflected that defendant made an instantaneous decision in a dangerous situation that was created by A.L.'s actions. Defendant was subjectively consciously aware that his daughter had opened the door of the moving car and stuck part of her body out of the car. There was no evidence that other hypothetical options would have minimized the risk to A.L. In sum, no rational trier of fact could have found that defendant acted knowingly to endanger his daughter's life or health by grabbing her hair to pull her back from the open door of a moving car.

¶ 52    In accordance with the foregoing rationale, we also hold that the State failed to refute the affirmative defense of necessity beyond a reasonable doubt. Once an affirmative defense is raised, the burden is on the State to disprove the defense beyond a reasonable doubt in addition to proving the elements of the offense. *People v. Grabow*, 2022 IL App (2d) 210151, ¶ 22. Here, the jury was instructed as to the necessity defense, without objection by the State.

¶ 53    Section 7-13 of the Code (720 ILCS 5/7-13 (West 2020)) sets forth the necessity defense:

"Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation

and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." Accord *People v. Janik*, 127 Ill. 2d 390, 399 (1989) (setting forth the elements of the necessity defense).

¶ 54   "The defense of necessity applies when the threat of harm was immediate, and defendant's conduct was the sole option to avoid injury." *People v. Guja*, 2016 IL App (1st) 140046, ¶ 47. The necessity defense involves the choice between two admitted wrongs where other optional courses of action are unavailable. *Janik*, 127 Ill. 2d at 399.

¶ 55   Defendant argues that the evidence established that he acted out of necessity when he pulled A.L.'s hair to prevent her from falling out of the moving car and that the State failed to disprove the necessity defense. The State counters that it disproved the necessity defense beyond a reasonable doubt. According to the State, the evidence established that the "entire situation was caused by defendant"; that defendant had alternative courses of action, including pulling over or slowing down; and that defendant's act of pulling A.L.'s hair with enough force to bring her into the front seat exceeded the conduct necessary to prevent A.L. from falling out of the car.

¶ 56   However, it was undisputed that defendant was lawfully taking his daughter on a winter vacation. While there was evidence of an argument regarding the destination, there was no evidence that defendant otherwise occasioned the resulting circumstances. As defendant argues, it was A.L.'s intervening act of opening the car door that escalated the circumstances to a life-threatening situation. Indeed, A.L. affirmatively acknowledged in her testimony that it was dangerous to open the door of the Jeep.

¶ 57   Moreover, the State's remaining arguments fail to appreciate the nature of the split-second decision was that required when A.L. opened the door of the moving car and stuck part of her body

out of it. The necessity defense, like self-defense or defense of another, "are all justification defenses that employ a similar balancing of the circumstances a defendant faced against the actions he took." *People v. Crowder*, 2018 IL App (1st) 161226, ¶ 29. There was simply no evidence presented that the alternatives to which the State cites would have prevented injury or that defendant's response exceeded what was necessary to prevent the greater harm of his daughter falling out of the moving car.

¶ 58    In sum, viewing all of the evidence in the light most favorable to the State, the State failed to prove defendant's guilt beyond a reasonable doubt. Accordingly, we are compelled to reverse the conviction for endangering the life or health of a child and vacate the sentence for that offense.

¶ 59                                    III. CONCLUSION

¶ 60    For the reasons stated, we reverse defendant's conviction for endangering the life or health of a child and vacate the sentence as to that offense. We affirm the judgment of the trial court in all other respects.

¶ 61    Reversed and vacated in part; affirmed in part.