**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220500-U

Order filed December 4, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0500 Circuit No. 22-DV-28 |
| PARIS J. POINDEXTER, | ) ) ) | Honorable Derek W. Ewanic, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The evidence presented at trial was sufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 2    Defendant, Paris J. Poindexter, appeals her conviction for domestic battery arguing the State's evidence was insufficient to sustain her conviction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged by complaint with two counts of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)). The charges alleged that defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Simone Williams, a family or household member. Count I alleged defendant struck Williams and count II alleged defendant pushed Williams during an altercation.

¶ 5    At a bench trial, Williams testified she and defendant were in a relationship and residing together on January 17, 2022. Williams testified that she arrived home at approximately 4 a.m. that morning. Williams was unable to enter the home as she usually did through the garage. Instead, Williams entered through the front door and continued upstairs to the bedroom, where she found defendant sleeping in bed with another woman. Williams testified she confronted defendant and defendant responded by hitting Williams in the face. This caused Williams to drop her cell phone, which she had been using to record the incident. Williams indicated she had been recording her interactions with defendant due to prior altercations. Williams and defendant then "tussle[d]" over the phone until defendant heard the home's security alarm and ran downstairs to disable it.

¶ 6    During Williams's testimony, the State introduced the video taken from her cell phone into evidence. In the video, Williams entered a dark bedroom and turned on the lights. Defendant and another woman are shown sleeping in the bed while Williams can be heard verbally expressing her disbelief. After Williams asked them to get off the bed so she could retrieve the bedding, defendant told Williams she would not be taking anything and yelled at her to leave. Defendant and Williams continued yelling indistinctly at each other, although Williams can be heard at one point saying she was on the lease. Defendant is then seen swiping her hand toward Williams before the phone falls to the ground and the video ends.

2

¶ 7    On cross-examination, Williams indicated she had provided proof that she was on the lease to the police, but not to the State because no one had asked for it. Williams acknowledged she had not been invited to the residence that morning, but stated she did not need an invitation because she lived there. Williams stated she went to the residence to retrieve supplies for her disabled niece, but after defense counsel asked whether Williams had signed a police report related to the incident, Williams clarified she went there to retrieve a change of clothing for her and her niece. After Williams reiterated that defendant had slapped her in the face during the altercation, defense counsel read a portion of her written statement to police. The statement indicated defendant had slapped Williams's phone.

¶ 8    Deputy Derek Nagel of the Will County Sheriff's Department testified that he responded to a disturbance call at the residence the morning of the incident. Williams told Nagel she was shoved to the ground during an altercation with defendant after returning home from out of town. Defendant told Nagel that Williams had shoved her first and she had responded by shoving Williams back. On cross-examination, Nagel indicated that Williams had not shown him a lease for the residence.

¶ 9    At the close of the State's case, defense counsel moved for directed verdict. The court denied the motion, and defendant subsequently testified. Defendant stated that on the morning of the incident, she was asleep in bed with Camille McEwing. Defendant woke when Williams entered the bedroom, turned on the lights, and loudly said "obscene things" while recording a video on her cell phone. Defendant asked Williams to stop recording and told her to leave. Williams continued to record and told defendant she was "going to expose" her. Defendant exited the bed and slapped the phone out of Williams's hand because she wanted Williams to stop recording. Defendant then went downstairs with McEwing. Defendant stated she was unable to leave the

3

residence because Williams had parked her car in front of the garage with defendant's vehicle inside. While downstairs, defendant heard loud noises and went upstairs to find Williams throwing defendant's belongings on the floor. Defendant asked Williams why she was throwing her belongings, and Williams responded by pushing her. Defendant testified that prior to the incident she had not seen Williams for four or five weeks. Defendant also stated that she alone paid the rent and bills for the residence.

¶ 10        The court found defendant guilty of count I and not guilty of count II. In rendering the verdict, the court found that Williams had a right to be present in the home at the time of the incident. The court pointed out that defendant's testimony confirmed Williams had been a resident. Although Williams had been away for several weeks, no evidence was presented indicating that Williams had left the residence permanently, and the court noted it was not unusual for people to be away from their homes for that length of time. Additionally, the court concluded that Williams presumably had used a key to enter through the front door because there were no signs of forced entry.

¶ 11        Defendant filed a motion to reconsider arguing, *inter alia*, that the State had failed to prove defendant was not justified in using force in defense of her dwelling and therefore the evidence presented was insufficient to support her conviction. In denying the motion, the court noted that it found Williams's testimony credible and her statement that she was on the lease was uncontradicted. Defendant was sentenced to 24 months' conditional discharge.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, defendant argues that the evidence at trial was insufficient to find her guilty beyond a reasonable doubt of domestic battery. When considering a challenge to the sufficiency of the evidence, the reviewing court is required to view the evidence in the light most favorable to

4

the prosecution and determine whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Id.*

¶ 14   For defendant to be convicted of domestic battery, the State had to prove that defendant knowingly made physical contact of an insulting or provoking nature with a family or household member without legal justification. See 720 ILCS 5/12-3.2(a)(2) (West 2022). Defendant solely contends the evidence was insufficient to prove that she was without legal justification because she was entitled to use force in defense of her dwelling. Under this affirmative defense, the use of force against another is justified when a person reasonably believes such force is "necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling." *Id.* § 7-2 (a). "Section 7-2(a) requires a reasonable belief both (1) that the victim's entry was unlawful and (2) that use of force was necessary to prevent or terminate his entry." *People v. Wiggen*, 2021 IL App (3d) 180486, ¶ 20. In addition to proving the elements of the offense, the State must also disprove the affirmative defense raised by defendant to sustain the conviction. *People v. Bausch*, 2019 IL App (3d) 170001, ¶ 22.

¶ 15   None of the evidence presented at trial established that defendant reasonably believed that Williams unlawfully entered the residence or that her conduct was necessary to prevent or terminate Williams's entry. To the contrary, defendant's own testimony demonstrates her use of force against Williams was not justified under a defense of dwelling theory. First, defendant acknowledged that Williams had belongings in the home and access to the residence. Additionally, as the circuit court noted, Williams's testimony that she was on the lease was uncontradicted.

5

Moreover, Williams testified she was residing in the home at the time of the incident and the court found her to be a credible witness. See *Wiggen*, 2021 IL App (3d) 180486, ¶ 16 (reviewing court will generally not substitute its judgment for that of the trier of fact in determining witness credibility). Based on these circumstances, we cannot find defendant had a reasonable belief that Williams entered the home unlawfully.

¶ 16     Second, defendant admitted during her testimony that she slapped the cell phone out of Williams's hand because she wanted Williams to stop recording, not as an attempt to get Williams to leave the house. Therefore, it is apparent from defendant's testimony that because her conduct was carried out with the express purpose of getting Williams to stop recording, she could not have reasonably believed her actions were necessary to terminate Williams's entry. Accordingly, when viewed in the light most favorable to the State, the evidence here does not support defendant's affirmative defense and is insufficient to raise reasonable doubt as to defendant's guilt of domestic battery.

¶ 17                                        III. CONCLUSION

¶ 18     The judgment of the circuit court of Will County is affirmed.

¶ 19     Affirmed.