2023 IL App (1st) 201375-U
No. 1-20-1375

FIRST DIVISION
May 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 CR 18227 |
| | ) | |
| CHRISTOPHER CALDWELL, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Angela Petrone, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justice Coghlan concurred in the judgment.
Justice Hyman dissented.

**ORDER**

¶ 1    *Held:* We affirm the circuit court's judgment granting the State's motion to dismiss and dismissing defendant's postconviction petition over defendant's contention that: (1) he received ineffective assistance of trial and appellate counsels related to the failure to request a jury instruction on the lesser-included offense of reckless conduct; (2) ineffective assistance of appellate counsel for the failure to challenge the excessive nature of his 30-year prison sentence; and (3) unreasonable assistance of postconviction counsel for failing to amend his postconviction petitions.

¶ 2    On appeal from the second-stage dismissal of his amended petition for postconviction relief,

defendant, Christopher Caldwell, argues that the postconviction court erred in granting the State's

motion to dismiss where: (1) he was denied effective assistance of trial counsel for failing to request a jury instruction on the lesser-included offense of reckless conduct, and ineffective assistance of appellate counsel for failing to raise this issue on direct appeal; and (2) he was denied effective assistance of appellate counsel for failing to challenge defendant's 30-year sentence as excessive; and (3) unreasonable assistance of postconviction counsel for failing to shape defendant's contentions into proper legal form. For the following reasons, we affirm.

¶ 3                              BACKGROUND

¶ 4        Defendant was charged with attempt first degree murder of a peace officer, attempt first degree murder and aggravated battery with a firearm for the shooting of Chicago Police Officer Thomas Sweeney, which occurred on July 11, 2006. The evidence at the jury trial is summarized below, relevant to the issues on appeal, but is more thoroughly recounted in our Rule 23 order on direct appeal, *People v. Christopher Caldwell*, 1-10-0483 (2012) (unpublished order pursuant to Illinois Supreme Court Rule 23).

¶ 5        Prior to trial, defendant filed a motion to suppress his statements on the grounds that he was intoxicated at the time of his arrest. Finding that the officer's testimony was credible, and defendant's testimony was not credible, the Honorable Angela Petrone denied defendant's motion to suppress statements. At the subsequent jury trial, the State presented the testimony of Officer Thomas Sweeney. He testified that on July 10-11, 2016, he and another officer were on patrol in a marked police car and dressed in police uniform. At approximately 12:30 a.m., the officers received a radio call of a "man with a gun" at the bus stop at the corner of 51st and King Drive, Chicago, Illinois. When they arrived, they did not see anyone there. As they continued to patrol the area, they received a second radio call of a "man with a gun" at the same bus stop. The male

was described as a black male wearing a white shirt and blue jeans. Upon arriving at the bus stop, Officer Sweeney saw defendant, who matched that description.

¶ 6    The officers approached defendant, getting as close as ten feet away before Officer Sweeney exited his marked police car. Officer Sweeney instructed defendant to place their hands on the hood of the police car because he believed that he may have been armed. Defendant did not comply with the officer's request and instead, immediately grabbed his waistband and ran. Officer Sweeney pursued defendant on foot and lost sight of him briefly when defendant turned the corner, but clearly saw defendant's face in good lighting.

¶ 7    After the police squad car approached defendant from the other direction, defendant changed directions and started running southbound towards Officer Sweeney. At this point, defendant was on the street and Officer Sweeney was on the sidewalk. Defendant then ran towards the entrance to a large apartment building with a courtyard. There was a gate at the entrance with a 60-foot-long brick tunnel that led to the courtyard. Officer Sweeney tried to grab defendant with his right hand, holding his service weapon in his left hand. Defendant slipped away and ran to the front of the gate. Officer Sweeney testified that, "At that point, [defendant] stopped in the corner, raised his left hand and kept his right hand down while holding a weapon." Officer Sweeney, standing five to six away, described the weapon as a small handgun.

¶ 8    Officer Sweeney had his service weapon pointed at defendant, looked him directly in the eyes, and ordered him to drop the handgun. Defendant did not drop his weapon and, instead, fled through the gate. Officer Sweeney took a couple steps and then stopped because he was concerned about his safety in the tunnel. At that point, defendant "turned and pointed the weapon" at Officer Sweeney. Facing the officer, defendant twice fired his weapon at him. Officer Sweeney felt an impact, described as a pinching sensation, on the lower right portion of his back. He took cover

behind the outer wall of the brick tunnel before returning fire at defendant. He fired three gunshots towards defendant as defendant continued to run away from the officer, holding his weapon in his hand. Officer Sweeney met up with his partner and then both officers returned to the squad car to continue searching for defendant.

¶ 9       Officer Sweeney later examined the area where he felt the pinching sensation and saw that the skin in that area was red and there were two holes in his outer bullet-proof vest. He was subsequently taken to the hospital for medical treatment and released later that night. At about 4:30 a.m. on July 12, 2006, Officer Sweeney identified defendant as the shooter in a physical lineup at the police station. He also identified security video from the apartment building, in which he and defendant could be seen during the pursuit and shooting but did not "reflect the shooting actually firing" the handgun.

¶ 10       Passion Payne and Monika St. Clair testified that they are cousins and in 2006 were living in a third-floor unit in the apartment complex in question. During the evening of July 11, 2006, they were in the apartment with Andrew Webb when they heard a knock at the back door of the unit. Payne went to the door and, finding that it was defendant, whom she knew from the neighborhood, she let him in. Payne "could tell he probably was drinking." Defendant went to the living room with Webb while Payne went to St. Clair's bedroom to watch television. Sometime later, Payne and St. Clair heard knocking again, and St. Clair admitted another resident of the building that she and Payne knew only as Robert. The police then came to both the front and back doors of the unit. Payne saw the police removing defendant from the unit. Payne was brought to the police station, where she was interviewed.

¶ 11       Andrew Webb testified that he knew defendant since childhood. He was sleeping on the living room sofa at St. Clair's apartment when he heard loud popping noises outside. A short time later,

he heard people talking outside the unit's back door and then saw defendant outside the door on the porch. Payne let defendant into the apartment. At one point, he saw defendant walk in the direction of the two bedrooms in the apartment. Then, several police officers entered the unit and searched it. Webb was arrested and taken to the police station. He denied telling the police that defendant ran into the apartment, breathing heavily, and put a gun in a garbage can outside the unit. He testified that he signed a handwritten statement because the detectives threatened to charge him as an accomplice if he did not sign it. He further testified that he had not been provided food or drink even though he told the ASA who took his handwritten statement, that he had been provided these items. He also denied that he was allowed to make corrections to his statement.

¶ 12      Assistant State's Attorney Emily Leuin (ASA Leuin) read Webb's handwritten statement into the trial record. In it, Webb explained that sometime after midnight, he heard three to five gunshots outside, then defendant appeared at the apartment door about a minute later. Defendant entered the unit, went to the windows, and then said "it went down" as he rubbed his hands on his pants. Webb took this statement to mean that defendant was involved in the shooting he had just heard. Defendant told Webb to keep looking outside for the police while defendant paced between the rear of the unit and the living room. Upon learning that the police were outside the apartment, defendant told Webb that he needed to "get rid of the gun" and then went to one of the rear bedrooms where he dropped the gun out a window into a garbage can. The police came to the apartment approximately one hour later, and defendant remained in the apartment during this time. Webb identified a particular gun as the one he saw defendant dispose of on the night in question.

¶ 13      After waiving his *Miranda* rights, defendant provided a handwritten statement to ASA Leuin, who read defendant's statement into the trial record. In it, defendant explained that he and some other men had an argument in the early morning of July 11, after which they threatened to return.

Believing they would return armed with a weapon; defendant obtained a gun before coming back to the area. While he was at the bus stop, a police car stopped, and the officers called defendant over to them. He fled, and one of the officers pursued him on foot. Defendant had his gun in one hand as he fled, and he fired two shots behind him to discourage the officer from his pursuit and to get away from the officer. He stated that when he fired the shot, he "knew that [the officer] was right there by the gangway…" Defendant continued his flight to the home of Monika St. Clair, a friend, where he flushed the two shell casings down a toilet and threw the gun out a window into a garbage can before he was arrested.

¶ 14     Detective Michael Jackson testified that he was searching the crime scene when he found a handgun in a garbage can at approximately 1:47 a.m. Officer Robert Bartlett testified that he and fellow officers went to the apartment overlooking the garbage can. When Officer Bartlett knocked on the door of St. Clair's third-floor apartment, a woman admitted them. The officers detained several people in the living room and searched the apartment. Detective Patrick Thelen testified that when he saw defendant in St. Clair's apartment, he believed that he fit the description of the shooter and placed him under arrest. Detective Thomas Benoit testified that he conducted a lineup at the police station during which Officer Sweeney identified defendant as the shooter.

¶ 15     Officer John Adams testified that he guarded the garbage can until the forensic investigator arrived, during which time he saw the gun inside the can. Police forensic investigator Joseph Dunigan testified that he examined and photographed the crime scene at the apartment building on the morning of the shooting. He removed and inventoried a gun from a garbage can. Four of the gun's six chambers were loaded and two were empty; that is, neither contained an unfired bullet nor a spent casing. Later, Investigator Dunigan performed a gunshot residue test upon defendant.

He also separately bagged and inventoried defendant's white shirt and Officer Sweeney's armored vest, and he took swabs for DNA testing from the recovered gun.

¶ 16    Forensic biologists Karlee Kane and Lauren Schubert of the state crime laboratory testified that Kane prepared the DNA swabs, from the recovered gun, for testing and Schubert conducted the DNA testing of two swabs against a sample from defendant. Both swabs had DNA from three persons, and defendant was excluded as a source for one swab but could not be excluded as a source for the other swab. For the swab where defendant was not excluded, one in 24 unrelated black persons (or one in 99 unrelated white persons, or one in 72 unrelated Hispanic persons) could similarly not be excluded as a source.

¶ 17    The parties stipulated that forensic chemist Mary Wong of the state crime laboratory tested the samples and found no gunshot residue. Wong concluded that defendant either "may not have discharged a firearm with either hand" or "the particles were removed by activity, were not deposited or were not detected by the procedures" and would explain that "running, rubbing [or] washing are all methods" for removing such residue. The parties also stipulated that no useable fingerprints were found on the gun or the four cartridges it contained.

¶ 18    Defendant testified that he did not shoot at Officer Sweeney and was sleeping at St. Clair's apartment at the time of the shooting. He denied fleeing from the police or having a gun on July 10-11. He testified that the person seen in the security video was not him, but someone dressed like he had been that night, in jeans and a white shirt.

¶ 19    He testified that he was awakened by police officers who arrested him, took his white shirt, and took him to the police station. There, he was placed in a lineup. When detectives tried to question him after the lineup, he requested counsel. A detective told him that he would look like a cold-blooded killer if he asked for an attorney. He was provided food and drink, which he did not

consume, but was not permitted to use the telephone. Questioning, including threats and insulting language, continued periodically despite his request for counsel. ASA Leuin visited him at some point, asked him for basic biological information, then returned about an hour later with a statement for him to sign. He was told that he could face attempted murder and 20 years' imprisonment if he did not cooperate, but aggravated battery charges and five years' imprisonment if he did. He signed the statement without being allowed to read the statement or make any corrections, and after it was suggested that "it would be better in the long run for me" if he signed. He further denied that he initialed the statement.

¶ 20       In rebuttal, ASA Leuin denied that she, or anyone in her presence, told defendant that, if he did not confess, requesting counsel would make him seem to be a cold-blooded killer. She denied leaving the interview room during the interview, and specifically denied briefly asking him for basic biological information before leaving the room. She was alone with him briefly so she could "make sure he was comfortable talking" without the officers present. ASA Leuin reiterated that she wrote out and reviewed defendant's statement in his presence, that both she and defendant signed each page, and that defendant and either herself or one of the detectives initialed each correction in her presence. Defendant did not request counsel in her presence, and he did not tell her that he had previously requested counsel, that the detectives had "badgered [him] so he wouldn't get a lawyer," or that he signed the statement to receive one year of imprisonment for aggravated battery rather than 20 years' for attempt murder.

¶ 21       The jury found defendant not guilty of attempt first degree murder of a peace officer and guilty of aggravated battery with a firearm. Prior to sentencing, trial counsel moved to withdraw as counsel explaining to the trial court that he had received a fax from defendant raising claims of ineffective assistance of counsel. After the State objected to the motion to withdraw, the trial court

inquired in open court of defendant as to the substance of his claims of ineffective assistance of counsel.

¶ 22    One of defendant's claims was that his trial counsel should have requested a jury instruction on the lesser-included offenses of reckless discharge and reckless conduct. Defendant stated that he asked his trial counsel about these offenses, and trial counsel "kind of just shrugged me off, like just brushed it past me." Defendant then stated that defense counsel "said he was gonna file for a lesser included instruction, but the next day he didn't file for one…" In response, trial counsel stated that defendant did not ask him to include a lesser-include offense instruction, but "[i]t was a possible strategy leading up to the final days that that be included, but the decision was made not to include it." The trial court rejected all of defendant's claims of ineffective assistance of trial counsel and also denied counsel's motion to withdraw. Subsequently, the trial court sentenced defendant to 30 years' imprisonment for aggravated battery with a firearm.

¶ 23                                   Direct Appeal

¶ 24    Defendant challenged his conviction on direct appeal on the grounds that the trial court erred in denying his motion to suppress his custodial statement because he had invoked his right to counsel and did not reinitiate conversation with the police before making the statement, and the evidence did not prove him guilty of aggravated battery with a firearm. On April 26, 2012, defendant's conviction was affirmed on appeal in an unpublished order. *People v. Christopher Caldwell*, 1-10-0483 (2012) (unpublished order pursuant to Illinois Supreme Court Rule 23).

¶ 25                           Postconviction Proceedings

¶ 26    On April 23, 2013, defendant filed a *pro se* postconviction petition. In that petition, he argued, *inter alia*, that: (1) he was denied a fair trial when the trial court denied his request for jury instructions on the lesser-included offense of reckless conduct, along with an allegation that his

trial counsel and the trial court erroneously advised him that an instruction on reckless conduct would be defeated by the law of transferred intent, as well as ineffective assistance of appellate counsel for failing to raise this issue on direct appeal; (2) the trial court abused its discretion at the sentencing hearing where the trial court failed to take into account defendant's rehabilitative potential, improperly considered gang affiliation evidence, and went beyond the statutory maximum sentence of 30 years' imprisonment by sentencing him to in additional term of three years' mandatory supervised release.

¶ 27     On August 15, 2014, petitioner filed his *pro se* amended postconviction petition in which he alleged: (1) ineffective assistance of trial counsel for falsely believing that aggravated battery with a firearm carried a sentence of 15-30 years' imprisonment, and (2) ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness on this issue.

¶ 28     On August 17, 2015, the Honorable Angela Petrone advanced defendant's *pro se* postconviction petition to the second stage of postconviction proceedings because more than 90 days had passed since defendant filed his petition. The postconviction court appointed the Office of the Public Defender but gave the case a continuance for one month for counsel to appear. On the next court date, the postconviction court learned that an assistant public defender had been appointed but was unavailable to appear that day. After several continues, on March 3, 2016, the postconviction court learned that newly appointed postconviction counsel was retiring. On April 13, 2016, a new assistant public defender appeared in court and informed the court that he had been assigned to defendant's case.

¶ 29     On April 17, 2019, postconviction counsel filed his Rule 651(c) certificate. The State filed its motion to dismiss the petition on August 14, 2019. In addition to responding to the issues raised in defendant's original *pro se* petition, the State argued that defendant's amended *pro se* petition

superseded his original *pro se* postconviction petition and, as a result, only the two claims raised in amended petition were properly before the court. Postconviction counsel filed a reply on November 6, 2019, arguing that the State's argument "defies both common law and common sense," and the courts should liberally construe *pro se* postconviction petitions. Postconviction counsel also attached a letter from defendant in which he wrote that he wanted the court to consider the claims on both *pro se* petitions. In a subsequent filing titled as a sur-reply, on February 5, 2020, postconviction counsel submitted an affidavit from defendant stating the same. Both parties filed additional motions addressing the relevant issues.

¶ 30     After the postconviction court heard oral argument from both parties, it issued a written order. In its written order, the trial court initially found that "petitioner intended the amended pro se post-conviction…to be a supplemental to, and not a replacement for, the original pro se post-conviction…[and] [t]his Court will consider claims from both petitions." Ultimately, the postconviction court granted the State's motion to dismiss defendant's original and his amended postconviction petitions, concluding that defendant failed to make a substantial showing of a constitutional violation.

¶ 31                                          ANALYSIS

¶ 32      On appeal, defendant's challenges his conviction and sentence pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Hodges*, 234 Ill.2d 1, 9 (2009); *People v. Peeples*, 205 Ill.2d 480, 509 (2002). Here, the postconviction court reviewed defendant's postconviction petition at the second stage of postconviction proceedings. At this stage, counsel may be appointed to an indigent defendant (725

ILCS 5/122-4 (West 2008)), and the State, as respondent, enters the litigation (725 ILCS 5/122-5 (West 2008)). The postconviction court must determine whether the petition and any accompanying documentation make "a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill.2d 239, 246 (2001) (citing *People v. Coleman*, 183 Ill.2d 366, 381 (1998)).

¶ 33    At this stage, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true. *People v. Pendleton*, 223 Ill. 458, 473 (2006). The postconviction court reviews the petition's factual sufficiency as well as its legal sufficiency considering the trial court record and appliable law. *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 22 (citing *People v. Alberts*, 383 Ill.App.3d 374, 377 (4th Dist. 2008)). If no such showing of a constitutional violation is made, the petition is dismissed. *Edwards*, 197 Ill.2d at 246. If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the postconviction court conducts an evidentiary hearing. *Id*; 725 ILCS 5/122-6 (West 2008).

¶ 34    Defendant's first two assertions concern allegations that his trial counsel was ineffective for failing to preserve several issues for appellate review, and his appellate counsel was ineffective for failing to properly raise these claims on direct appeal. Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test also applies to claims of ineffective assistance of appellate counsel. *People v. Rogers*, 197 Ill.2d 216, 223 (2001). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill.2d 142, 163 (2001). To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case can be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance. *Id.* at 697.

¶ 35    A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and prejudiced the defendant. *Rogers*, 197 Ill.2d at 223. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill.2d 348, 362 (2000). Thus, the inquiry as to prejudice requires the reviewing court to examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Id.* In other words, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal. *People v. Easley*, 192 Ill.2d 307, 329 (2000). Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill.2d at 223.

¶ 36                                    **I. Failure to Request Jury Instruction**

¶ 37    Defendant contends that the postconviction court erred in dismissing his postconviction petition at the second stage of postconviction proceedings where he made a substantial showing that his trial counsel provided ineffective assistance for failing to request a jury instruction for the lesser-included offense of reckless conduct, and his appellate counsel was ineffective for failing to raise this issue on direct appeal. In support, defendant relies upon his handwritten statement to the police that he fired his gun behind him as he fled from Officer Sweeney. In turn, the State

initially argues that defendant forfeited his claim that his trial counsel was ineffective where defendant previously raised this issue in his posttrial *pro se* oral motion before the trial court and it could have been raised on direct appeal. Alternatively, the State argues that appellate counsel was not ineffective for failing to raise the issue of the jury not being provided a jury instruction on the lesser-included offense of reckless conduct where this type of decision amounted to a strategic choice, and defendant has not shown that the evidence support this instruction.

¶ 38      To begin with, defendant forfeited his claim that his trial counsel was ineffective for failing to request a jury instruction for the lesser-included offense of reckless conduct. After thoroughly reviewing the record, we find that defendant raised this exact issue in his oral *pro se* motion, and the trial court heard from both defendant and defense counsel as to this particular issue. "[I]ssues that could have been raised on direct appeal but were not, are forfeited." *People v. English*, 2013 IL 112890, ¶ 22 (citing *People v. Ligon*, 239 Ill.2d 94, 103 (2010)). Therefore, defendant could have raised this issue on direct appeal, but choose not to do so, resulting in forfeiture of defendant's claim of ineffective assistance of trial counsel.

¶ 39      That leaves defendant's claim that his appellate counsel was ineffective for failing to raise trial counsel's error. Unlike defendant's claim for ineffective assistance of trial counsel, this claim is not forfeited, as this court has elected to relax the ordinary forfeiture rules with respect to postconviction claims stemming from appellate counsel's ineffectiveness. *English*, 2013 IL 112890, ¶ 22.

¶ 40      Substantively, we recognize that "'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *People v. Grabow*, 2022 IL App (2d) 210151, ¶ 20 (quoting *People v. Everette*, 141 Ill.2d 147, 156 (1990). Both parties are entitled to have a jury instructed on their theories of the case and,

generally, an instruction is warranted if there is even slight evidence to support it. *People v. Miller*, 2021 IL App (1st) 190060, ¶ 44 (citing *People v. Jones*, 175 Ill.2d 126, 131-32 (1997)). A jury instruction on a lesser-included offense is only required when the evidence reveals that the jury could rationally find the defendant guilty of the lesser offense yet acquit the defendant on the greater offense. See *People v. Hamilton*, 179 Ill.2d 319, 324 (1997); *People v. Cardamone*, 381 Ill.App.3d 462, 408 (2d Dist. 2008).

¶ 41    However, "[i]t is well settled in Illinois that counsel's choice of jury instructions, and the decision to rely on one theory of defense to the exclusion of others, is a matter of trial strategy." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97 (citing *People v. Douglas*, 326 Ill.App.3d 65, 75 (1st Dist. 2005). "Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence" and therefore, are "generally immune from claims of ineffective assistance of counsel." *People v. Enis*, 194 Ill.2d 361, 378 (2000). Thus, trial counsel's decision as to which jury instruction to tender can support a claim of ineffective assistance of trial counsel only if that choice is objectively unreasonable. *Mister*, 2016 IL App (4th) 130180-B, ¶ 97.

¶ 42    Here, trial counsel's decision to not request instructions regarding reckless conduct amounted to trial strategy as it would have been inconsistent with defendant's own testimony as to how the shooting occurred. For instance, in *People v. Higgins*, 233 Ill.App.3d 295 (3rd Dist. 1992), the defendant, who was convicted of aggravated battery with a firearm, argued that there was some evidence that he acted recklessly in shooting the victim and, consequently, his trial counsel was ineffective for failing to tender instruction on the lesser-included offense of reckless conduct. On the other hand, the State argued that the trial counsel's decision amounted to trial strategy and not ineffective assistance of trial counsel. In rejecting the defendant's contention, the court found:

"Here, the record clearly shows that defense counsel's theory of defense was that the defendant had not committed the shooting. Based on the evidence presented, counsel could have reasonably elected to forego presenting a reckless conduct instruction in order to weaken his position that the defendant did not commit the charged felony and should be acquitted. Consequently, we find that counsel's decision was a matter of trial strategy and did not constitute ineffective assistance." *Higgins*, 233 Ill.App.3d at 298.

¶ 43    Likewise, in *People v. Morrow*, 2013 IL App (1st) 121316-U.[1] In *Morrow*, the defendant was convicted of first degree murder after a shooting. At trial, the defendant testified that he denied shooting the victim and denied being present at the time of the shooting. In a successive postconviction petition, the defendant argued that his appellate counsel was ineffective for failing to argue on direct appeal that the defendant's trial counsel was ineffective for failing to request second degree murder instructions. We disagreed, stating, in part:

"However, even if we determine that there was sufficient evidence to support a second-degree murder instruction, defense counsel may have concluded that a self-defense theory would have been incompatible with the theory presented, since it would require defendant to admit to the shootings. '[T]he decision of whether to submit an instruction on a lesser included offense is typically considered to be one of trial strategy that has no bearing on the competency of counsel because counsel could have reasonably believed that the instruction would have converted a likely acquittal into a likely conviction of the lesser crime.' [Citations] Here, defense counsel made the strategic decision to argue that the State failed to prove its case,

---

[1] This case is a published opinion but incorrectly labelled as an unpublished Rule 23 order.

and although defendant's trial counsel argument was ultimately unsuccessful, that 'does not mean counsel performed unreasonably and rendered ineffective assistance.' [Citation.]" (Internal quotation marks omitted.) *Morrow*, 2013 IL App (1st) 121316-U, ¶ 59.

¶ 44    At trial, defendant's theory was based upon misidentification. Defendant testified that he did not shoot at Officer Sweeney and was sleeping at St. Clair's apartment at the time of the shooting. He also testified that the person in the video was not him, but someone dressed like him. In light of defendant's testimony in which he wanted the jury to believe that this case was a result of mistaken identity, trial counsel's decision to proceed with that theory amounted to trial strategy. Here, the alternative theory would have required defense counsel to concede that defendant was the shooter, but that defendant committed the shooting recklessly as opposed to knowingly or intentionally. Therefore, we find that defendant failed to overcome the presumption that trial counsel's failure to request the jury instruction was trial strategy.

¶ 45    Moreover, the postconviction court's decision was proper where defendant cannot make a substantial showing of resulting prejudice where a jury instruction on the lesser-included offense of reckless conduct was not warranted based upon the evidence. Defendant's statement in his handwritten statement that he fired two shots behind him to discourage the officer from his continued pursuit did not amount to the slight evidence necessary for a jury instruction on the lesser-included offense of reckless conduct. Also, a jury instruction was not required where the evidence did not show that jury could rationally find him guilty of reckless conduct and acquit him of aggravated battery with a firearm.

¶ 46    The jury received instructions as to attempt first degree murder of a peace officer and aggravated battery with a firearm. The State concedes that reckless conduct is a lesser-included

offense of aggravated battery. See *People v. Willis*, 170 Ill.App.3d 1259, 1261-62 (3rd Dist. 1988) (reckless conduct may be a lesser-included offense of aggravated battery). The mental state required for reckless conduct distinguishes that offense from attempt first degree murder and aggravated battery with a firearm. Specific intent is an element of the offense of attempt murder. *People v. Brown*, 2015 IL App (1st) 131873, ¶ 14. Aggravated battery is not a specific intent crime but does have an intent element and requires at least a "knowing" mental state. *Brown*, 2015 IL App (1st) 134049, ¶ 44. The State is required to prove that a defendant was "consciously aware" that his conduct was practically certain to cause great bodily harm. *People v. Steele,* 2014 IL App (1st) 121452, ¶ 23.

¶ 47      On the other hand, to sustain a conviction for reckless conduct of the same facts, it must be proven that the defendant's conduct was "reckless." 720 ILCS 5/12-5(1) (West 2011). A defendant acts recklessly when he consciously disregarded a substantial and unjustifiable risk and such disregard constituted "a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2010).

¶ 48      Defendant claims that, based on the evidence presented at trial, a reasonable jury could have found him guilty of reckless conduct and not guilty of aggravated battery with a firearm because, in his handwritten statement, he stated that he fired two shots while running away from the officer to discourage the officer from his pursuit. Defendant points to the difference between defendant's statement and Officer Sweeney's testimony that defendant turned, aimed, and fired at him. Defendant suggests that the crux of the difference is whether he aimed at the officer when he fired the handgun. However, there was insufficient evidence presented to support defendant's theory of defense for a conviction of the lesser offense of reckless conduct. Defendant knew that he was being chased by Officer Sweeney, had his gun in one hand as he fled, and fired two shots behind

him to discourage the officer from his pursuit and to get away from the officer. In his statement, he never stated that he did not aim at the officer when he fired the handgun twice. In fact, he stated that when he fired the shot, he "knew that [the officer] was right there by the gangway…"

¶ 49     The cases defendant relies upon for support are unpersuasive. Defendant cites to *People v. Willet*, 2015 IL App (4th) 130702, and *People v. Bradley*, 256 Ill.App.3d 514 (1st Dist. 1993), two cases in which the reviewing court found that it was error to not include a lesser-included jury instruction based upon evidence presented at trial regarding defendant's custodial statement. In sharp contrast to the facts in the instant case, the defendant in *Willet* did not deny that he made the statements to law enforcement and then testify to an alternative theory at trial. *Willet*, 2015 IL App (4th) 130702, ¶ 49.

¶ 50     In *Bradley*, the reviewing court found that there was evidence to support that the defendant acted recklessly, to support a jury instruction on the lesser-included offense of criminal damage to property, when he stated in his custodial statement, that he "may have dropped and retrieved a lighted cigarette during a struggle…" 256 Ill.App.3d at 516. However, there is no evidence that defendant displayed the same type of conduct in the instant case. Moreover, these cases dealt with a claim of trial court error for failing to include the instructions as opposed to a claim of ineffective assistance of appellate counsel.

¶ 51     Defendant cites to *People v. Upton*, 230 Ill.App.3d 365 (1st Dist. 1995), as a case in which "defendant who fired gun at tow truck towing his car entitled to reckless conduct instructions[.]" The defendant's actions in *Upton* are factually distinct from those in the instant case. In *Upton*, the reviewing court found that there was sufficient evidence to support a reckless conduct where the defendant testified that he saw a pickup truck, without any commercial identification, hooking up his car, that the men did not respond when he shouted at them, but he fired a warning shot from a

considerable away. The first shot struck the boom protruding from the rear of the truck. He fired a second shot towards the tire of the truck while he was running after the truck as it was driving away. The evidence also established that as soon as the defendant went back inside his residence, he called the police and reported his car was stolen. Here, defendant fired the shots at the police officer, striking him the lower back, knowing that the officer was pursuing him and knowing that the officer "was right there by the gangway…" Moreover, in *Upton*, the defendant's testimony was consistent with a charge of reckless conduct (*Upton*, 230 Ill.App.3d at 369-370), whereas, in this case, defendant testified to not even being present at the shooting.

¶ 52    Therefore, we affirm the trial court's dismissal of defendant's postconviction petition on this issue.

¶ 53        **B. Ineffective Assistance of Appellate Counsel For Failing to Challenge Sentence**

¶ 54    Defendant argues that he made a substantial showing that he was denied effective assistance of appellate counsel when that counsel failed to challenge defendant's sentence on direct appeal. He argues that, despite the presence of mitigating evidence at the sentencing hearing, the trial court refused to consider this evidence in determining defendant's sentence. He asks for his case be remanded for a new sentencing hearing or, alternatively, a third-stage evidentiary hearing. In turn, the State responds that defendant did not make an adequate showing of ineffective assistance of appellate counsel where he failed to demonstrate a substantial likelihood that his sentence would have been reduced had such a claim been raised.

¶ 55    Sentencing decisions are entitled to great weight and deference. *People v. Latona*, 184 Ill.2d 260, 272 (1998). The trial court, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the "cold" record. *People v. Alexander*, 239 Ill.2d 205, 213 (2010). A reviewing court may reduce a sentence

imposed by the trial court only when the record affirmatively shows that the trial court abused its discretion. *People v. Andrews*, 2013 IL App (1st) 121623, ¶ 23; *People v. Perruquet*, 68 Ill.2d 149, 154 (1977). That power, however, should be exercised "cautiously and sparingly." *Alexander*, 239 Ill.2d at 212. A sentence is considered an abuse of discretion only where it is "greatly at variance with the spirit and purpose of law, manifestly disproportionate to the nature of the offense." *Id*. at 212. The spirit and purpose of the law are promoted when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant. *People v. Boclair*, 225 Ill.App.3d 331, 335 (1st Dist. 1992).

¶ 56    Relevant factors in determining an appropriate sentence include the nature of the crime, protection of the public, deterrence and punishment, and the defendant's rehabilitative prospects and youth. *People v. Bobo*, 375 Ill. App. 3d 966, 988 (1st Dist. 2007); *People v. Lamkey*, 240 Ill.App.3d 435, 441-42 (1st Dist. 1992). Additionally, a trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 18-19 (1991). The weight attributed to each factor in aggravation and mitigation in imposing a sentence depends on the particular circumstances in each case. *People v. D'Arezzo*, 229 Ill. App. 3d 428, 430 (2nd Dist. 1992).

¶ 57    In determining an appropriate sentence, the seriousness of the offense or the need to protect the public may outweigh any mitigating factors and the goal of rehabilitation. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 34. Indeed, "a defendant's potential for rehabilitation is but one factor for a sentencing court to consider, and it must be weighed against other countervailing factors, including the seriousness of the crime." *People v. Evans*, 373 Ill.App.3d 948, 968 (1st Dist. 2007). This Court has found, "[t]he most important factor a court considers when deciding a

sentence is the seriousness of the offense…Rehabilitative potential, therefore, is not accorded more weight than any other factor." *Evans*, 373 Ill.App.3d at 968.

¶ 58 Defendant did not make a substantial showing that he was denied the effective assistance of appellate counsel where he cannot establish that there is a reasonable probability that the outcome of his appeal would have been different. Initially, we recognize that defendant's sentence was within the statutory range proscribed for aggravated battery with a firearm. The sentencing range for this offense, a Class X felony, is 6 to 30 years' imprisonment. 720 ILCS 5/12-4.2(A)(1) (West 2006).[2] Thus, defendant's 30-year sentence was within the prescribed statutory range and presumed to be proper. Moreover, we presume that in imposing this sentence, the court considered the relevant factors in aggravation and mitigation. *People v. Murray*, 2020 IL App (3d) 180759, ¶ 27 (citing *People v. Wilson*, 2017 IL App (3d) 150165, ¶ 14). To overcome this presumption, defendant has the burden of showing that the court failed to consider the proper factors. *Id*.

¶ 59 Here, the trial court conducted a thorough review of the pre-sentence report, the testimony of Officer Sweeney at the sentencing hearing and considered the relevant statutory aggravating and mitigating factors. While defendant suggests that the State offered "little aggravation," the trial court considered that defendant's conduct caused or threatened serious harm where "[i]t threatened death. But for the bullet-proof vest, we may have had a murder case here." The trial court's comments show that it recognized that defendant's decision to fire a gun at Officer Sweeney to escape from the officer constituted an action which threatened serious harm to the officer. Defendant's argument, that the officer's injuries were "minor" in this case ignores the fact that the harm caused by defendant's actions was due to fact that the officer decided to wear a bulletproof

---

[2] The applicable aggravated battery with a firearm statute today is 720 ILCS 5/12-3.05(e)(1); however, the 2006 statute is the one under which defendant was charge and sentenced.

vest to protect himself from the exact type of actions defendant displayed that day, as opposed to any actions taken by defendant in firing his weapon. Defendant's argument also ignores that this factor does not require a showing that the defendant's actions "caused" serious harm, but also encompasses actions that "threaten" serious harm. See 730 ILCS 5/5-5-3.2(a)(1) (West 2014). Defendant's actions of firing a weapon at the officer met the requirements of conduct that threatened serious harm.

¶ 60    The trial court also considered, in aggravation, evidence of defendant's prior criminal history. "Prior convictions, or recidivism, [are] a traditional, if not the most traditional, basis for…increasing an offender's sentence." *People v. Fields*, 383 Ill.App.3d 920, 921 (1st Dist. 2008) (citations and quotations omitted). In the four years leading up to his arrest for this case, defendant was twice convicted of possession of a controlled substance and once for auto theft and the misdemeanor offenses of battery and resisting arrest. The trial court also found that this sentence was necessary to deter others from committing the same offense.

¶ 61    Contrary to defendant's claim that the trial court "improperly" rejected the mitigation evidence presented and that he "presented substantial mitigating evidence demonstrating his rehabilitative potential[,]" during the sentencing hearing, the trial court considered the applicability of each of the statutory mitigating factors. Having considered the pre-sentence investigation, the trial court was also aware of defendant's moral character, social environment, habits, and rehabilitative potential. See *People v. Wright*, 272 Ill.App.3d 1033, 1046 (1st Dist. 1995) ("where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation.") Accordingly, there is no evidence to contradict the presumption that the court considered all the relevant factors, including those in mitigation, in determining defendant's sentence. *People Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 62    Defendant does not point to anything in the record to demonstrate that the trial court refused to consider the mitigating evidence, and, instead, focuses on how the trial court chose to weigh the mitigating evidence. However, a reviewing court may not reweigh the factors involved in a sentencing decision. *People v. Alexander*, 239 Ill.2d 205, 214 (2010). Additionally, the existence of mitigating factors does not mandate imposition of the minimum sentence (*People v. Garibay*, 366 Ill.App.3d 1103, 1103 (2d Dist. 2006), or preclude the imposition of the maximum sentence. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 ("The trial court is not obligated to reduce a sentence from the maximum allowed simply because mitigating factors are present.") (citing *People v. Pippen*, 324 Ill.App.3d 649, 652 (4th Dist. 2001)). Additionally, the mitigation evidence presented does not persuade us to find that the trial court abused its discretion. Defendant relies, in part, upon evidence in the pre-sentence report showing his educational achievements, his work history, and his family support. The pre-sentence report shows that he was supported by his father and mother, but that he obtained a G.E.D. after dropping out of high school because he became involved with the "wrong crowd," took one semester of college classes before dropping out and, despite being in "good physical health[,]" held a job for "a few weeks" before he quit the job due to "the tough hours." The existence of this type of mitigation evidence did not preclude the imposition of the maximum sentence in this case.

¶ 63    Based upon the facts presented to the trial court at the sentencing hearing, we agree with the State that the evidence does not show that the trial court abused its discretion in sentencing defendant to 30 years' imprisonment. Consequently, we affirm the postconviction court's finding that appellate counsel was not ineffective for failing to raise a claim of excessive sentence on direct appeal.

¶ 64                              **III. Supreme Court Rule 651(c) certification**

¶ 65    Defendant contends that his postconviction petitions should be remanded for further second-stage proceedings where his postconviction counsel provided unreasonable assistance of counsel by failing to make "several necessary amendments" to his petitions. In turn, the State argues that the record does not rebut the presumption that postconviction counsel fulfilled his obligations under Supreme Court Rule 651(c).

¶ 66    During postconviction proceedings, there is no constitutional right to the assistance of counsel. *People v. Custer*, 2019 IL 123339, ¶ 30. The right to counsel in postconviction proceedings is wholly statutory. *Custer*, 2019 IL 123339, ¶ 30. Therefore, a defendant is entitled only to the level of assistance provided by the Act. *Id.*; *People v. Lander*, 215 Ill.2d 577, 583 (2005). The Act provides for a "reasonable" level of assistance. *People v. Pendleton*, 223 Ill.2d 458 (2006). A reasonable level of assistance is less than that afforded by the federal or state constitutions. *Pendleton*, 223 Ill.2d at 473. To assure the reasonable assistance required by the Act, Rule 651(c) imposes specific duties on postconviction counsel. *People v. Turner*, 187 Ill.2d 406, 410 (1999). Thus, counsel must: (1) consult with the petitioner either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. Ill. Sup. Ct. R. 651(c) (eff. July 1, 2017).

¶ 67    To that end, Rule 651(c) requires that postconviction counsel file an affidavit certifying that he or she has complied with these requirements, or, in the absence of an affidavit, the record must demonstrate that counsel adequately fulfilled his duties as postconviction counsel. *People v. Johnson*, 154 Ill.2d 227, 238 (1993) (citing *People v. Szabo*, 144 Ill.2d 525 (1991)). "Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on the motion of the State, is *de novo*." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

If the record contains a certificate pursuant to Rule 651(c), that certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46; *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. However, this presumption may be rebutted by the record. *People v. Marshall*, 375 Ill.App.3d 670, 680 (1st Dist. 2007).

¶ 68    In this case, postconviction counsel filed a Rule 651(c) certificate, thereby causing a presumption that defendant received the representation required by the rule at this stage of proceedings. *Jones*, 2011 IL App (1st) 092529, ¶ 23. Defendant does not dispute that postconviction counsel examined the record of the proceedings at trial and consulted with him to ascertain his contentions of deprivation of constitutional rights but contends that postconviction counsel failed to make "any of several necessary amendments" to his petition.

¶ 69    However, "[t]here is no requirement that post-conviction counsel must amend a petitioner's *pro se* post-conviction petition." *Turner*, 187 Ill.2d at 412 (citing *People v. Spreitzer*, 143 Ill.2d 210, 221 (1991). Although counsel may raise additional issues if he or she so chooses, counsel is not required to do so. *People v. Pendleton*, 223 Ill.2d 458, 475 (2006). "Post-conviction counsel is only required to investigate and properly present the *petitioner's* claims. * * *Counsel's responsibility is to adequately present those claims which the *petitioner* raises." *People v. Davis*, 156 Ill.2d 149, 164 (1993) (emphasis in original). "Postconviction counsel has no obligation to engage in a generalized 'fishing expedition' in search of support for claims raised in a postconviction petition." *People v. Vasquez*, 356 Ill.App.3d 420, 425 (2d Dist. 2005) (citing *People v. Davis*, 156 Ill.2d 149, 163 (1993)). Counsel is also not required to advance frivolous or spurious claims. *People v. Greer*, 212 Ill.2d 192, 205 (2004). Thus, "where***the presumption of reasonable assistance is present, 'the question of whether the *pro se* allegations had merit is crucial

to determining whether counsel acted unreasonably by not filing an amended petition.'" *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *People v. Profit*, 2012 IL App (1st) 101307, ¶ 23.

¶ 70    First, defendant suggests postconviction counsel provided unreasonable assistance by his failure to file an amended postconviction petition to preserve all of the claims raised in defendant's original petition as well as his supplemental petition. Defendant points out that postconviction counsel waited to address this issue in his sur-reply motion after the State argued that defendant forfeited the issues raised in his original postconviction petition. However, because the postconviction court found that defendant did not forfeit any of his claims, and proceeded to address all of them, defendant cannot establish unreasonable assistance. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58 (the defendant must establish that prejudice prong for his claim of unreasonable assistance).

¶ 71    Second, defendant argues that his postconviction counsel provided unreasonable assistance by his failure to attach police reports to support the claim that Officer Sweeney made prior inconsistent statements in these reports. In defendant's original *pro se* postconviction petition, defendant alleged that Officer Sweeney prepared a "Tactical Response Report" as well as an "Officer's Battery Report" in which he provided information relevant to this shooting. A thorough review of the record shows that defendant referenced these documents as attached exhibits to his petition. While the appellate record does not contain any of the exhibits that defendant referenced through his petition, presumably these records were part of the record available to the parties and the postconviction court during the postconviction proceedings. Consequently, defendant's reference to the documents as attached exhibits explains why postconviction counsel did not attach these reports to any amended petition as they were already part of the record.

¶ 72      Third, defendant argues that his postconviction counsel provided unreasonable assistance by his failure to amend the petition to further clarify his claim that the trial testimony did not establish that Officer Sweeney's bulletproof vest bore appropriate markings necessary to establish a proper chain of custody pursuant to Chicago Police Department policies. Defendant suggests that the allegations in his postconviction petition should have been further clarified because they were "not entirely clear…" On the contrary, defendant's allegations were clear in his original *pro se* postconviction petition as he went into great detail as to his claims. He outlined the trial testimony of Officer Sweeney and Forensic Investigator Dunigan's testimony and argued that the vest presented at trial did not contain "the date the ballistic panel was issue[d]" as well as the officer's employee number as required by the policy, and referenced documents attached to his petition in support of his argument. Therefore, defendant did not establish that his postconviction counsel provided unreasonable assistance.

¶ 73      Fourth, defendant argues that his postconviction counsel provided unreasonable assistance by his failure to file an amended petition to include a claim of that his trial counsel was ineffective for failing to request a jury instruction for the lesser-included offense of reckless discharge. This would have required postconviction counsel to add a new claim. We agree with the State's argument that there is no requirement that postconviction counsel amend a petitioner's *pro se* postconviction petition to add a new claim. *People v. Turner*, 187 Ill.2d 406, 412 (1999); *People v. Davis*, 156 Ill.2d 149, 164 (1993). The supreme court has been definitive in stating that appointed postconviction counsel need only amend the *pro se* petition to sufficiently present the defendant's claims (*People v. Richardson*, 382 Ill.App.3d 248, 254 (2008) (citing *People v. Pendleton*, 223 Ill.2d 458, 475 (2006)), and need only amend those claims that are meritorious. See *People v. Pace*, 386 Ill.App.3d 1056, 1062 (2008) (when postconviction counsel determines,

after investigating the defendant's claims, the claims are without merit he may choose to stand on the petition). Here, we are not convinced of the merits of this case where defendant merely cites to the statutory definition of reckless discharge of a firearm. 720 ILCS 24-1.5(a), in support of his claim without any analysis as to the presence of "some evidence" in the record to support such a lesser-included instruction. Consequently, we find that defendant has not shown that his postconviction counsel provided unreasonable assistance by failing to add this new claim.

¶ 74    Fifth, defendant argues that postconviction counsel provided unreasonable assistance by failing to file a supplemental petition to provide documentation and further explain his request for a reduction in his sentence based upon his rehabilitative efforts in prison. However, defendant fails to recognize the timeline in this case. This particular claim was not contained in defendant's original *pro se* postconviction petition or in his supplemental petition. Instead, on May 28, 2020, defendant filed a *pro se* petition seeking a sentence reduction based upon his contention that, while incarcerated, he had been working towards an associates degree and had applied for, but on a waiting list, for vocational employment. At the time that defendant filed this petition, defendant was represented by postconviction counsel who had already filed his Rule 651(c) certificate on April 17, 2019. As the postconviction court recognized, defendant was not permitted to make such a request where he was represented by counsel, and a defendant not entitled to hybrid representation. *People v. Trotter*, 2015 IL App (1st) 131096, ¶ 37 *(citing People v. Handy*, 278 Ill.App.3d 829, 836-37 (4th Dist. 1996) (the defendant's *pro se* motion for reduction of sentence was not properly before the trial court where the defendant was represented by trial counsel at the time that he filed the motion)). Because defendant was not entitled to file this petition, defendant cannot establish that his postconviction counsel was ineffective for failing to file an amended petition, especially after postconviction counsel had already filed a Rule 651(c) certificate.

¶ 75      In his reply brief, defendant argues that postconviction counsel failed to provide reasonable assistance when he "did not excise any claims that he could not support." However, he fails to cite to any case that provides that counsel provides unreasonable assistance in this instance. Again, defendant's argument presupposes that there were claims in which counsel found were nonmeritorious or spurious. In doing so, he asks for us to equate the filing of a Rule 651(c) certificate with postconviction counsel's belief that the defendant's arguments are frivolous and patently without merit. We decline to do so. In a Rule 651(c) certificate, postconviction counsel does not attest to the viability of a defendant's claim but, instead, attests that there were no amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contention. Ill.Sup.Ct.R. 651(c) (eff. July 1, 2017). Rule 651(c) does "not require postconviction counsel to advance frivolous or spurious claims." *People v. Greer*, 212 Ill.2d 192, 205 (2004). If postconviction counsel believes that a defendant's postconviction petition is frivolous or patently without merit, counsel may seek to withdraw or stand on the petition. See *People v. Suarez*, 224 Ill. 2d 37, 43 (2007) (citing *Greer*, 212 Ill. 2d at 209, and noting, "In *Greer*, the issue was whether postconviction counsel may seek to withdraw as counsel due to a petition's lack of merit. This court determined that such a procedure was permissible, noting that under [Supreme Court] Rule 137 counsel could not ethically pursue claims that were frivolous and patently without merit.").

¶ 76      Finally, defendant argues that the "excessive delay" in filing an amended petition further supports the conclusion that postconviction counsel provided unreasonable assistance. At one point, defendant suggests that the delay caused by his postconviction counsel amounted to seven years, but, in actuality, it was approximately three years, which in some cases is too long, but given the circumstances of this case, has not been stretched out by any lack of attention by postconviction counsel. The postconviction court advanced defendant's claims to second stage proceedings on

August 17, 2015. While defendant's initial postconviction counsel was appointed and announced his retirement shortly after being assigned to the case, the case was then reassigned to new postconviction counsel on April 13, 2016. He filed his Rule 651(c) certificate three years later, on April 17, 2019. Thus, postconviction counsel was assigned to defendant's case for only three years.

¶ 77     During those three years, postconviction counsel asked the court to sign a court order to obtain the appellate records, informed the court that he was reviewing the transcript from the trial, had contacted the former postconviction counsel to consult with him about the case, and that he had contacted defendant "a couple times" to discuss the issues. At another point, postconviction counsel also informed the court that he was waiting to get more information from defendant before he could conduct further investigation, and there was a delay because defendant had been placed in quarantine due to a flu epidemic. Later, he informed the court that he had been in contact with defendant and defendant's father. On October 24, 2018, postconviction counsel explained that he had been delayed, in part, by the fact that his case load had significantly increased due to the resignations of other attorneys. Certainly, the passage of three years and postconviction counsel's persistence in representing defendant, do not support defendant's claim that postconviction counsel provided unreasonable assistance.

¶ 78     Defendant cites to several cases in which reviewing courts or individual justices have expressed concern about extreme delays in second-stage proceedings. *People v. Kelley*, 2012 IL App (1st) 101521; *People v. Bennett*, 394 Ill.App.3d 350 (2nd Dist. 2009); *People v. Woidtke*, 313 Ill.App.3d 399 (5th Dist. 2000) (Maag, J., specially concurring). We find that none of these cases are applicable to the facts here.

¶ 79     In *Kelley*, the delay of 12 years from the filing of a *pro se* postconviction petition to the entry of the second-stage dismissal order was one of several factors in the court's decision to find that

the defendant did not receive reasonable assistance from counsel. *Kelley*, 2012 IL App (1st) 101521, ¶ 40. In fact, it was the combination of the delay, postconviction counsel's failure to fulfill the duty to shape defendant's *pro se* allegations into proper form, and counsel's inquiry for the court to clarify at what stage the proceedings were, which showed "counsel either lacked basic knowledge of the Act or fundamentally misunderstood it." *Id.* ¶¶ 26, 31, 40. "However, *Kelly* [sic] is not authority for finding Rule 651(c) noncompliance based on delay alone…" *People v. Blake*, 2022 IL App (2d) 210154, ¶ 27.

¶ 80        Defendant relies on *Bennett* as a case in which "the court criticized post-conviction proceedings that 'stalled' at the second stage for seven years." While true, the Second District also found that Rule 651(c) did not apply to the facts in the case because postconviction counsel drafted the petition. *Bennett*, 394 Ill.App.3d at 354. Therefore, defendant's reliance on *Bennett* is unpersuasive.

¶ 81        In the special concurrence in *Woidtke*, Justice Maag expressed concern that "the actions of the trial court and counsel in allowing the defendant' postconviction petition to languish for *years* without even a hearing are unconscionable." (Emphasis in original) *Woidtke*, 313 Ill.App.3d at 413 (J. Maag, specially concurring). It is unclear from the provided facts how many years had passed between the time that the defendant filed his postconviction petition, and the court in *Woidtke* was not considering the passage of time in the context of a claim of unreasonable assistance. Therefore, we fail to find that this case supports a finding that defense counsel provided unreasonable assistance in this case.

¶ 82        Because we find that defendant has not established that his postconviction counsel's failure to amend his postconviction petitions constituted unreasonable assistance, we find that

postconviction counsel fulfilled his obligations under Rule 651(c). Therefore, we find that it is unnecessary to remand this cause for further second-stage proceedings.

¶ 83                                                    CONCLUSION

¶ 84      For the foregoing reasons, we affirm the second-stage dismissal of defendant's postconviction petition.

¶ 85      Affirmed.

¶ 86      JUSTICE HYMAN, dissenting:

¶ 87      Christopher Caldwell challenges his sentence, claiming direct-appeal counsel erred by failing to challenge the trial court's reliance on a "version of events clearly rejected by the jury." The trial court sentenced Caldwell to the maximum term for aggravated battery, which requires finding Caldwell knowingly caused specific harm, after the jury acquitted him of the more serious charge of attempted first-degree murder of a peace officer. That charge requires finding an intent to kill. Compare 720 ILCS 5/8.4 and 720 ILCS 5/9-1(a)(1), (b)(1) (attempt first-degree murder of peace officer) with 720 ILCS 5/12-4.2(a)(1) (aggravated battery with firearm).

¶ 88      The majority determines that the record contains no basis for direct-appeal counsel to have challenged Caldwell's sentence. But the record belies its conclusion. I would find that Caldwell made a substantial showing of ineffective assistance. So I dissent.

¶ 89                                           Seriousness of the Offense

¶ 90      Sentencing considers the defendant's rehabilitative potential and the seriousness of the offense. Ill. Const.1970, art. I, § 11; *see People v. Alexander*, 239 Ill. 2d 205, 214 (2010). Caldwell's claim mainly turns on "seriousness" as the trial court construed it.

¶ 91      The jury received a pattern instruction (Illinois Pattern Jury Instructions, Criminal, No. 5.01A) on intent. Still deliberating, it sent a note asking the trial court to "elaborate" on "intent to kill." In

the same note, the jury asked for a transcript of Officer Sweeney's testimony. After five hours of deliberations, and receiving the *Prim* instruction (*People v. Prim*, 53 Ill. 2d 62, 76 (1972)), the once-deadlocked jury acquitted Caldwell of the more serious charge.

¶ 92    Following the acquittal, the State sought to nullify the jury's apparent finding on intent, twice arguing that Caldwell was guilty. The State contended, "With all due respect to this jury's verdict, it is the People's position that * * * the evidence in this case showed the Defendant was proven guilty beyond a reasonable doubt of attempt murder of a police [*sic*] officer as well[.]" According to the State, Caldwell "decided to try to kill a Chicago police officer."

¶ 93    Caldwell's counsel pushed back. And the trial court responded, "The jury did find the defendant not guilty of attempt first [-] degree murder. I cannot consider that charge in sentencing." But its pronouncement of the sentence not only contradicts, but also undermines, its deference.

¶ 94    The trial court rejected the evidence supporting the jury's refusal to find Caldwell had the intent to kill. Referencing the summary of Caldwell's post-arrest statement, the trial court held, "I believe it was a self-serving statement made to rebut the inference of intent, and it successfully did that as the jury found the defendant not guilty of attempt first [-] degree murder." It reached a similar conclusion about a mitigating factor: whether Caldwell "contemplate[d]" that his conduct would cause or threaten serious physical harm to another (730 ILCS 5-5-3.1(a)(2)). In the court's view, Caldwell "had to know."

¶ 95    In his postconviction petition, Caldwell faulted the trial court for relying on a "version of events clearly rejected by the jury." On appeal, Caldwell likewise faults the trial court for having "focused on the offense for which [he] was acquitted." How does the majority handle Caldwell's objection? By sidestepping it, focusing instead on the trial court's finding on a separate sentencing factor: whether Caldwell's conduct caused or threatened serious harm. 730 ILCS 5-5-3.2(a)(1). Though

related, this inquiry markedly differs from what Caldwell "contemplate[d]" about that conduct (730 ILCS 5-5-3.1(a)(2)).

¶ 96 To be sure, the Illinois Supreme Court has permitted trial courts to consider acquitted conduct in limited circumstances not relevant here. For example, it held that due process does not require resentencing when a defendant later secures an acquittal on charges considered by the trial court when sentencing the defendant for an earlier conviction. *People v. Jackson*, 149 Ill. 2d 540, 553 (1992); *see People v. Robinson*, 286 Ill. App. 3d 903, 910 (1997) (reading *Jackson* as permitting trial court to consider death of victim though jury acquitted on first-degree murder and convicted on attempt armed robbery); *United States v. McClinton*, 23 F.4th 732, 736 (7th Cir. 2022), *petition for cert. filed,* No. 21-1557 (filed June 10, 2022) (asking United States Supreme Court whether fifth and sixth amendments prohibit federal court from basing defendant's sentence on acquitted conduct).

¶ 97 But the trial court did not consider acquitted conduct. Instead, the trial court nullified the jury's acquittal by finding that Caldwell had an intent to kill. Although it purported to reject the State's improper request, the trial court still expressly found Caldwell "had to know."

¶ 98 <u>Substantial Showing of Ineffective Assistance of Counsel</u>

¶ 99 Caldwell claims direct-appeal counsel erred by failing to challenge the trial court's reliance at sentencing on a "version of events clearly rejected by the jury." Caldwell argues that counsel's "decision to forgo an excessive sentence argument was constitutionally ineffective." In general, "[a] petitioner who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner." *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 100    Assessing this claim, we start by analyzing the merits of the underlying issue. *People v. Simms*, 192 Ill. 2d 348, 361 (2000). Here, the excessive sentence claim. See *People v. Stacey*, 193 Ill. 2d 203, 211 (2000). If counsel erred by failing to raise the issue on direct appeal, the next inquiry involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Simms*, 192 Ill. 2d at 362. This is not an outcome-determinative test; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 101    The majority holds Caldwell failed to make a substantial showing that counsel provided ineffective assistance on direct appeal. See *People v. Domagala*, 2013 IL 113688, ¶ 35. I disagree. Caldwell focuses on the core abuse at sentencing.

¶ 102    The trial court's finding that Caldwell had an intent to kill effectively nullified the jury's acquittal. Yet, direct-appeal "counsel did not challenge the 30-year sentence as excessive" despite the trial court's "reliance on the attempt murder [.]" As Caldwell puts it, this error "begged to be challenged," but direct-appeal counsel failed to challenge it.

¶ 103    Further, counsel's error led to the maximum term of 30 years. "For most violent acts, although the violence creates real harm and needs to be repaired, it does not create an ongoing safety crisis that must be addressed with ever-increasing amounts of incarceration." Marta Nelson, Samuel Feineh, & Maris Mapolski, *A New Paradigm for Sentencing in the United States* 29 (New York: Vera Institute of Justice 2023) (canvassing studies on so-called "violent offenders"). Here, as Caldwell contends and the record attests, his 30-year sentence is "highly disproportionate to the offense and disregards the facts of the case, the mitigating evidence, and the constitutional directive of restoring offenders to useful citizenship."

¶ 104    The trial court's disregard for the facts permeated its sentencing decision.

¶ 105    First, its finding on intent arbitrarily rejected the jury's contrary verdicts defining the seriousness of the offense as an aggravated battery, not an attempt first-degree murder of a peace officer. See *People v. Lewis*, 234 Ill. 2d 32, 48 (2009) (noting, the "integrity of the judicial process is also affected when a decision is not based on applicable standards and evidence[] but appears to be arbitrary").  Second, its improper finding supported its later decision to reject Caldwell's statement in allocution (an apology) as not "sincere." Caldwell had apologized to the trial court, his family, and Officer Sweeney "for the incident that occurred," and the trial court stated, "This is not an incident. This is more than an incident." Third, the trial court rejected the application of an otherwise proper mitigating factor (that Caldwell did not contemplate his conduct would cause or threaten serious harm) because of its improper finding Caldwell had intended to kill. Again, in the trial court's view, Caldwell "had to know."

¶ 106    Caldwell should get an evidentiary hearing to prove his allegations about direct-appeal counsel's strategic missteps. *People v. Domagala*, 2013 IL 113688, ¶ 35 (noting, second-stage "review tests [only] the legal sufficiency of the petition").

¶ 107    I would reverse and remand.